**AMERICAN HOME ASSURANCE COMPANY, Plaintiff,**

v.

**SPORT MASKA, INC., Maska U.S., Inc., and CCM Holdings (1983), Inc., Defendants.**

**Civ. A. No. 91–13002–K.**

United States District Court, D. Massachusetts.

Dec. 4, 1992.

William J. Dailey, Jr., James P. Donohue, Jr., Robert G. Eaton, Sloane & Walsh, Boston, MA, for plaintiff.

John W. Fieldsteel, Hovey, Urbelis, Fieldsteel & Bailin, Boston, MA, for defendants.

## MEMORANDUM AND ORDER

KEETON, District Judge.

This is a declaratory judgment action concerning obligations of plaintiff insurer (American Home) under a commercial liability policy issued to defendants Sport Maska, Inc. (Sport), Maska U.S., Inc. (Maska), and CCM Holdings (1983), Inc. (CCM). Now before the court are (1) Sport and CCM's motions to dismiss for lack of personal jurisdiction (Docket No. 7, filed March 12, 1992) with supporting memorandum (Docket No. 8, filed March 12, 1992), and (2) plaintiff's opposition (Docket No. 16, filed June 8, 1992) with supporting memorandum (Docket No. 17, filed June 8, 1992).

Also before this court (though not directly involved in the present motions to dismiss) is the underlying product liability action. *Maruzzi v. Maska U.S., Inc., et al.*, Civil Action No. 89–3053–K. In *Maruzzi*, plaintiff, who was rendered quadriplegic during a high school hockey game, alleges that he sustained injuries caused by defendants' defectively manufactured hockey helmet.

American Home is defending Sport, Maska, and CCM in the *Maruzzi* action, pursuant to defendants' insurance contract with American Home for defense (as well as indemnification, should defense be unsuccessful) of "claims made" during the policy coverage period. (Compl. ¶ 19.) When undertaking the defense of that action, however, American Home reserved its right to contest liability for indemnification. (Compl. ¶ 19, 20.)

American Home filed this action against Sport, Maska, and CCM, seeking a declaration of the rights and obligations of the parties under the insurance contract. American Home did not make Maruzzi a party to this action.

American Home contends that Maruzzi's "claim" against the defendants was "made" prior to the policy period (Compl. ¶¶ 25, 26, 27) and, alternatively, that defendants did not comply with the policy's notification requirements. (Compl. ¶¶ 31, 34, 37.)

Maska does not contest jurisdiction over it but denies material allegations of American Home (Answer ¶¶ 19, 20) and asserts that American Home must indemnify it against liability resulting from Maruzzi's claims. (Answer at 5.)

Sport and CCM base their pending motions to dismiss on alleged lack of personal jurisdiction.

## I.  METHOD OF DECIDING THE MOTION TO DISMISS

The First Circuit has recognized three distinct methods of deciding a motion to dismiss for lack of personal jurisdiction. *See Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671 (1st Cir.1992). Under each method, once personal jurisdiction is challenged, the burden is on the plaintiff to present evidence sufficient to make a "showing" of each fact necessary to establish the court's jurisdiction. *Id.* at 675 (citations omitted).

Under the most commonly used method, the court requires a plaintiff to make only a *prima facie* showing of facts sufficient to support *in personam* jurisdiction. If the court takes this route, it does not make findings of fact. Instead, it accepts as true, for the purposes of the immediate ruling, all jurisdictional contentions properly supported by proffered evidence. *Id.*

When, on the other hand, the court determines that "it is unfair to force an out-of-state defendant to incur the expense and burden of a trial on the merits in the local forum without first" requiring the plaintiff to make more than a *prima facie* showing of jurisdiction, it invokes the second or third method. *Id.* at 676. The court either (second) makes findings by a *preponderance of the evidence* or (third) makes findings as to whether there is a *likelihood* that sufficient jurisdictional facts exist. *Id.* at 676–77. When using either the second or third method, the court may hold a hearing in aid of its function as factfinder. *Id.* at 676. Oral testimony is not required, however; evidence may be received by affidavit. *Id.*

In the present case, jurisdictional facts are intertwined with the merits of the underlying tort action. As explained in Part III, under some of the asserted grounds of jurisdiction as to each defendant in this action, plaintiff must show that its product (a hockey helmet) caused tortious injury in the Commonwealth of Massachusetts to Maruzzi (plaintiff in the related tort action) as one of the essential elements of personal jurisdiction over that defendant in this declaratory action. In these circumstances, I conclude that the fairest and best course of deciding the pending motion to dismiss is to use the first method, applying the *prima facie* standard.

## II.  FACTUAL BACKGROUND

Some of the facts necessary to plaintiff's making a *prima facie* showing of jurisdiction are not disputed. Both Sport and CCM are incorporated in Canada with principal places of business located in Quebec. Sport manufactures, among other products, hockey helmets. CCM is a holding company that licenses its trademarks, including the use of such trademarks on hockey equipment. Sport owns one-half of the outstanding shares in CCM.

Maska is a Vermont Corporation. Plaintiff alleges that Maska is a wholly-owned subsidiary of Sport. In support of this allegation, however, plaintiff submits two affidavits that are somewhat contradictory. It is unclear from the record whether Maska is Sport's wholly-owned subsidiary (H. Zunenshine Aff. of 6/5/90 ¶ 3), or instead both Sport and Maska are wholly-owned subsidiaries of another corporation, SLM International, Inc., and are therefore affiliates (H. Zunenshine Aff. of 2/21/92 ¶¶ 3, 4, 5). For reasons stated in Part III, I conclude that I need not resolve this possible discrepancy.

The affidavits submitted are sufficient to support a finding that all of Sport's prod-

ucts sold in the United States are sold through Maska, pursuant to an exclusive distributorship agreement. Maska purchases merchandise from Sport's factory in Canada, F.O.B. Canada. Title, and all risk of loss as between the two entities, passes from Sport to Maska in Canada. Sport has granted Maska an exclusive sublicense agreement for use of the CCM trademark in the United States; all sales of CCM products in the United States are handled through Maska. Maska sells Sport's products, under the CCM trademark, to customers within the Commonwealth of Massachusetts.

Sport's total sales, for the years 1986—1989, were: 1986—$38,478,000; 1987—$46,933,000; 1988—$55,796,000; and 1989—$65,952,000. (Sport's Answer to Maruzzi's Jurisdictional Interrog. No. 10 in Civil Action 89–3053–K, attached to Pl.'s Mem. as Ex. 4.) Maska's sales of Sport's products in the Commonwealth of Massachusetts, for the years 1986—1989, totaled: 1986—$697,716; 1987—$592,133; 1988—$958,523; and 1989—$1,083,158. (Maska's Answer to Maruzzi's Jurisdictional Interrog. No. 10 in Civil Action 89–3053–K, attached to Pl.'s Mem. as Ex. 6.) Sport's percentage of total revenue, derived from the sales of its products in the Commonwealth from 1986—1989, was: 1986—2.1%; 1987—1.47%; 1988—1.7%; and 1989—1.9%. (Cote Aff. ¶ 3.)

Sport and Maska share common officers and directors. Howard Zunenshine is President of both companies. David Zunenshine, Michael Zunenshine, and Dennis Cote maintained management positions within both companies. (Sport's Answer to Maruzzi's Jurisdictional Interrog. No. 7 in Civil Action 89–3053–K, attached to Pl.'s Mem. as Ex. 4; Maska's Answer to Maruzzi's Jurisdictional Interrog. No. 7 in Civil Action 89–3053–K, attached to Pl.'s Mem. as Ex. 6.)

Plaintiff does not contest recitations in defendants' affidavits that: (1) neither Sport nor CCM has ever registered to do business in the Commonwealth of Massachusetts or appointed the Commissioner of Corporations and Taxation of the Commonwealth as its agent for service of process; (2) neither corporation has ever had any officer, agent or other person representing it in Massachusetts in the sale of merchandise or services, nor has either corporation ever had an office, sales room, branch plant, warehouse, telephone, telephone listing, or post office box in Massachusetts; (3) neither corporation has ever owned real property in Massachusetts; and (4) neither corporation has ever advertised in Massachusetts, except by placing advertising in national trade journals published outside of Massachusetts that may be seen by persons in Massachusetts. (Aff. H. Zunenshine at ¶¶ 6–10; Aff. D. Zunenshine at ¶¶ 5–9.)

Sport representatives have visited Massachusetts for both personal and business purposes. Plaintiff proffers no evidence regarding these trips other than an affidavit that such trips have occurred and that any such trips were "unrelated to the purchase or sale of CCM hockey helmets with the exception of possibly attending trade shows which may occasionally be based in Boston, Massachusetts." (Cote Aff. ¶ 12.)

Plaintiff does not contest defendants' proffered evidence that all negotiations regarding the insurance policy took place either in meetings in the Province of Quebec, Canada or by telephone, facsimile, or mail communications by and between individuals located in the Province of Quebec, Canada, and New Jersey. (Kovatch Aff. ¶¶ 5, 6.) Plaintiff does not allege any contacts with the Commonwealth of Massachusetts relating to the negotiation, and issuance of the insurance policy.

## III. THE JURISDICTIONAL INQUIRY

Plaintiff and both defendants have argued as if jurisdiction over Sport would establish jurisdiction over CCM. It is not clear that this is so. Nevertheless, I accept this premise as a basis for deciding the present motion under the *prima facie* standard, because it is not contested by any party at the present time.

This court's exercise of personal jurisdiction over defendants is appropriate only if (a) defendants come within the juris-

dictional grant provided in the Massachusetts long-arm statute and (b) jurisdiction over defendants comports with due process. *Bond Leather Co. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928, 931 (1st Cir.1985). To defeat defendants' motion to dismiss for lack of personal jurisdiction, plaintiff must make a *prima facie* showing as to every fact required to satisfy both the Massachusetts long-arm statute and the due process clause of the Constitution. *See U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.,* 894 F.2d 9, 11 (1st Cir.1990). I turn first to the statutory inquiry.

### A. The Massachusetts Long–Arm Statute

In this case, it is appropriate to consider several distinct bases for potential jurisdiction under the Massachusetts long-arm statute. The statute, in pertinent part, provides:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> (a) transacting any business in this commonwealth;
>
> (b) contracting to supply services or things in this commonwealth;
>
> (c) causing tortious injury by an act or omission in this commonwealth;
>
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;
>
> (e) having an interest in, using or possessing real property in this commonwealth;
>
> (f) contracting to insure any person, property or risk located within this commonwealth at the time of contracting;
>
> . . . .

Mass.Gen.L. ch. 223A, § 3.

American Home has asserted that subsection (e), among others, applies to this case. American Home's proffer of evidence and memorandum of arguments, however, make no showing relevant to jurisdiction under subsection (e). I will not consider that subsection further.

### 1. Subsections (a) and (c)

In asserting jurisdiction under subsections (a) and (c), American Home does not allege or offer proof that Sport and CCM, their officers or employees, had material contacts with Massachusetts. Rather, American Home advances two theories based on Maska's relationships with Sport and CCM.

### (a) Agency

■ To support its claim of jurisdiction over Sport and CCM, American Home relies on an assumption that this court has personal jurisdiction over Maska. Emphasizing the introductory provision of the statute that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent," Mass.Gen.L. ch. 223A, § 3, American Home seeks to attribute all of Maska's contacts with the forum to Sport and CCM.

■ Plaintiff alleges, but provides no factual support for a finding of, an agency relationship between Maska, as agent, and both Sport and CCM as principals. Plaintiff describes the parent-subsidiary relationship between Sport and Maska, and then concludes that such a relationship is a "clear" demonstration that Maska "was acting in an agency capacity on behalf of Sport ... and CCM." (Pl. Mem. at 8.) Even when viewing the evidence in the light most favorable to American Home, however, I conclude that it is far from clear that Maska can be found to be an agent of either Sport or CCM. An agent acts on behalf of the principal and subject to the principal's direction and control. *See* Restatement (Second) of Agency § 1 (1957). Plaintiff does not proffer any evidence that any of the defendants understood their relationship to be one of agency, or that they held themselves out to the public in this way. In short, plaintiff has failed to make any showing of evidence to support the allegation of agency.

(b) Disregarding Separate Corporate Entities

█ Plaintiff American Home appears to argue, in the alternative, that Sport and CCM's alleged control of Maska requires this court to disregard the separate corporate entities. To support this contention, plaintiff must meet a very high standard. Defendants correctly argue that disregard of separate corporate entities is the exception, not the rule, under Massachusetts law. *See, e.g., My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 233 N.E.2d 748, 751 (1968).

█ Piercing the corporate veil is permitted only where there is confused intermingling between corporate entities or where one corporation actively and directly participates in the activities of the second corporation, apparently exercising pervasive control. It is settled that if there is evidence of fraud and injurious consequences from such an intercorporate relationship, a court may disregard the separate corporate entities. *Logan Equipment Corp. v. Simon Aerials, Inc.*, 736 F.Supp. 1188, 1205 (D.Mass.1990), citing *My Bread*, 353 Mass. at 619–20, 233 N.E.2d at 752.

Plaintiff fails to proffer evidence sufficient even to make a *prima facie* showing (1) that Sport and CCM control or direct Maska's activities, or (2) that Maska is merely the alter-ego of Sport or CCM. Where the affairs of the corporations are not so intertwined as to demonstrate that the two corporations are, in reality, a single entity, the parent cannot be held responsible on an alter-ego theory. *Miller v. Honda Motor Co.*, 779 F.2d 769, 772 (1st Cir. 1985); *Buckeye Associates, Ltd. v. Fila Sports, Inc.*, 616 F.Supp. 1484, 1490 (D.Mass.1985) (citations omitted). Construed in the light most favorable to plaintiff, the record reflects no more than that (1) Maska is the wholly-owned subsidiary of Sport, and (2) Sport, CCM, and Maska share some common officers.

That a parent and a subsidiary share common officers, by itself, is not enough to support the alter-ego theory. *See, e.g., Miller*, 779 F.2d at 772. Plaintiff has proffered no evidence that defendants' dealings were fraudulent and had injurious consequences or that defendants have used the corporate form merely to avoid liability for wrongdoing. "[T]here is nothing fraudulent or against public policy in limiting one's liability by the appropriate use of corporate insulation." *Id.* at 773. On the record before me, I conclude that plaintiff's allegations of alter-ego corporate liability are unsupported by any proffered evidence. Thus, there is no basis for piercing the corporate veil to obtain jurisdiction over defendants.

2. Subsection (d)

The standard for a showing of *in personam* jurisdiction under subsection (d) has two distinct elements: (1) a claim arising out of tortious injury in the commonwealth caused by an act or omission *of the defendant* (or an agent of the defendant) outside the commonwealth and (2) some additional contact of the defendant with the commonwealth of a type specified in the statute. *See* Mass.Gen.L. ch. 223A § 3(d).

(a) Tort Claim Arising Out of Act or Omission of the Defendant

American Home's argument for jurisdiction under subsection (d) over each defendant fails unless the claim asserted by American Home in this action for a declaratory judgment regarding liability insurance coverage for that defendant is "a cause of action in law or equity arising from" that defendant's "causing tortious injury in this commonwealth by an act or omission outside this commonwealth ...," as these phrases are used in the statute. American Home's arguments for jurisdiction under subsection (d) have simply bypassed this issue. No precedent is cited to support jurisdiction on this ground, and I am not aware of any. One may reasonably argue that statutory authorizations (state and federal) for declaratory judgments implicitly recognize that when there is a dispute about liability insurance coverage, the insurer as well as the insured has a "cause of action" in the sense in which that concept is used in the long-arm statute. Even so, it does not follow that the insurer's cause of

action *arises out of the insured's act or omission causing tortious injury* in the commonwealth.

For this reason, I am skeptical of the assumption, upon which American Home appears to rely, that if the defendants are subject to personal jurisdiction in the *Maruzzi* action (the tort case) they must also be subject to personal jurisdiction *under subsection (d)* in American Home's declaratory action regarding the obligation to indemnify under insurance coverage. The claim in the declaratory action concerns a cause of action in contract. It stretches the text of the long-arm statute to say that the contract claim arises out of acts of the defendants causing tortious injury. I conclude, however, that there is a high probability that I will not need to resolve this question in this case because long-arm jurisdiction is likely to be established under one or more of the other subdivisions of the long-arm statute, considered below.

### (b) Additional Contact of Defendants with the Commonwealth

██ In the event it should later be necessary to address the issue noted in part (a) immediately above, and also because of relevance to the due process issue considered in Part III.B, I take note that American Home has satisfied the second of the distinct elements required to show jurisdiction under subsection (d).

This second inquiry is disjunctive; plaintiff must show that (1) defendants do business or solicit business in Massachusetts, or (2) engage in some other persistent course of conduct in Massachusetts, or (3) derive substantial revenue from goods used or consumed or services rendered, in Massachusetts, Mass.Gen.L. ch. 223A, § 3(d).

Plaintiff argues that this element of the prerequisites to jurisdiction is satisfied because defendants meet all three alternative standards outlined above. I conclude, however, that plaintiff has proffered no evidence to show that either Sport or CCM "regularly does or solicits business" in Massachusetts, or otherwise engages in any "persistent course of conduct" here.

The remaining issue regarding applicability of subsection (d) is the substantial revenue question. The uncontested record shows that Sport's total sales, for the years 1986—1989, were: 1986—$38,478,000; 1987—$46,933,000; 1988—$55,796,000; and 1989—$65,952,000. Maska's total sales of Sport's products in the Commonwealth of Massachusetts, for the years 1986—1989 totaled: 1986—$697,716; 1987—$592,133; 1988—$958,523; and 1989—$1,083,158. Sport's percentage of total revenue derived from the sales of its products in the Commonwealth from 1986—1989 was: 1986—2.1%; 1987—1.47%; 1988—1.7%; and 1989—1.9%.

"It is well settled under Massachusetts law that 'substantial revenue' is not an absolute amount nor an absolute percentage of total sales." *Keds Corp. v. Renee International Trading Corp.,* 888 F.2d 215, 219 (1st Cir.1989) (the sale of 6000 pairs of shoes for $15,000 meets the literal statutory requirement) (citing *Heins v. Wilhelm Loh Wetzlar Optical Machinery GmbH,* 26 Mass.App.Ct. 14, 522 N.E.2d 989, 994 n. 5 *review denied,* 402 Mass. 1105, 525 N.E.2d 678 (1988)); *Mark v. Obear & Sons, Inc.,* 313 F.Supp. 373, 375–376 (D.Mass.1970) ($5,000 in sales is enough for statute). "All that is required is literal satisfaction of the statutory requirement." *Keds Corp.,* 888 F.2d at 219 (citations omitted). I conclude that Sport's yearly revenues of hundreds of thousands of dollars, derived from the sale of CCM products in Massachusetts, is, as a matter of law, "not insubstantial." *Mark,* 313 F.Supp. at 375. Accordingly, plaintiff has made an adequate *prima facie* showing as to the second inquiry relevant to *in personam* jurisdiction over Sport and CCM under section 3(d).

### 3. Subsection (b)

Is a contract of liability insurance a contract "to supply services or things in this commonwealth," as that phrase is used in subsection 3(b) of the Massachusetts long-arm statute? Is a claim for declaratory judgment of lack of coverage, brought by the insurer against a defendant insured, a "cause of action in law or equity arising

from the [defendant insured's] ... contracting to supply services or things in this commonwealth," as that phrase is used in subsection 3(b)?

If, first, the dispute regarding coverage extends to the duty to defend as well as the duty to indemnify and, second, the defendant insured is subject to *in personam* jurisdiction in the underlying tort action (here, the *Maruzzi* case), the argument for an affirmative answer to both questions is cogent and persuasive. The assistance-and-cooperation clause of the typical liability insurance contract requires action of the insured in the commonwealth—to assist and cooperate in preparation and trial of the tort claim against the insured. If it is reasonably foreseeable that the insured may be haled into a court in the commonwealth, it is also reasonably foreseeable that the insured's contracting to assist in the defense will require acts in the commonwealth that may reasonably be described as "supplying services ... in this commonwealth." The argument is less cogent, however, if the duty to defend is not contested and the dispute arises only as to the insurer's duty to indemnify.

■ Another argument for concluding that personal jurisdiction may be shown in this case applies to a dispute regarding the duty to indemnify as well as a dispute regarding the duty to defend. "Cause of action," absent some special qualification of the phrase, is reasonably interpreted as meaning a claim by either party to a dispute over the legal consequences of a contractual relationship between two parties, and especially so in view of statutory authorizations (state and federal) for declaratory judgment proceedings.

■ Absent directly controlling precedent, I conclude that if the defendants are subject to *in personam* jurisdiction in a court in the commonwealth in the tort action (here the *Maruzzi* case) under any subsection of the Massachusetts long-arm statute, then under subsection (b) they are also subject to *in personam* jurisdiction in a court in the commonwealth in the insurer's declaratory action seeking adjudication of a dispute between the insurer and the defendants over the insurer's duty to indemnify under the liability insurance contract.

The issue as to *in personam* jurisdiction over the defendants in the underlying tort action (the *Maruzzi* case) is considered in Part IV below.

### 4. Subsection (f)

"A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

. . . .

(f) contracting to insure any person, property, or risk located within this commonwealth at the time of contracting;"

. . . .

Mass.Gen.L. ch. 223A, § 3.

■ "Risk" is a forward-looking concept. Once all relevant events have occurred and, in relationship to liability insurance, we can look back and say the legal consequences of those events have been finally determined, risk has been resolved, and there is certainty one way or the other. For this reason, a requirement that the risk be "located within this commonwealth at the time of contracting" is not a barrier to *in personam* jurisdiction in this case. To the extent that it is reasonably foreseeable that a defendant will be subject to personal jurisdiction in the commonwealth with respect to a tort action, the liability insurance contract will apply to a "risk located within this commonwealth at the time of contracting." This point applies to the present case regardless of whether American Home can show that the defendants are subject to jurisdiction over the defendants in the *Maruzzi* case under subsection (d). As noted in Part III.A.4 above, jurisdiction in the *Maruzzi* case under subsection (d) depends on a showing, among other facts, that an act of the defendant(s) caused a tortious injury in the commonwealth. In contrast, under subsection (f) the requirement concerns *risk* of such liability rather than establishment of such liability in fact.

■ Is jurisdiction under subsection (f) nevertheless precluded on the ground that

only the insurer "contract[s] to insure" a risk? That is, does subsection (f) extend jurisdiction over nonresident insurers only, and not over nonresident insureds? Though the issue is reasonably debatable, I conclude that the interpretation of subsection (f) most likely to be reached by the Supreme Judicial Court of Massachusetts, if and when the issue comes before it, is that each party to a contract of liability insurance covering risks incident to litigation in Massachusetts courts is a person "contracting to insure ... [a] risk located within this commonwealth at the time of contracting." Both parties undertake obligations that are to be performed in the commonwealth—*e.g.*, the insurer to defend and the insured to assist and cooperate. This meaning might have been expressed more clearly by a phrase such as "contracting with respect to insurance" rather than "contracting to insure." Also, one may reasonably infer from the text of the statute that the drafter's focus was on the nonresident insurer. Quite different, however, is the inference that the drafter also focused on distinguishing between the nonresident insurer and the nonresident insured and meant to exclude the nonresident insured from the statute's reach. That meaning, too, if it had been intended by the drafter, could easily have been expressed clearly.

I conclude that, as applied to a context such as is presented in this case, the phrase "contracting to insure" is more reasonably interpreted as applying to both the insurer and the insured of a liability insurance contract.

### B. The Due Process Analysis

■ Having established that the requirements of the long-arm statute for personal jurisdiction over the defendants is satisfied in this case under subsection (f), and as the case proceeds may be shown to be satisfied under other subsections as well, I turn to the constitutional inquiry. To defeat defendants' motion to dismiss, plaintiff must also show that the exercise of personal jurisdiction over defendants will not offend the due process clause of the Constitution.

Two conditions must be met before a foreign defendant can be brought into court in conformity with the due process clause. First, "the defendant must have purposely established 'minimum contacts' with the forum such that he can reasonably anticipate being haled into that forum's court." *U.S.S. Yachts*, 894 F.2d at 11 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted)). "Second, if such contacts exist, the exercise of personal jurisdiction over the defendant must comport with 'fair play and substantial justice.'" *U.S.S. Yachts*, 894 F.2d at 11 (citing *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (citations omitted)).

I have concluded that plaintiff has made a *prima facie* showing of jurisdiction in this case over the defendants Sport and CCM under subsection (f) of the long-arm statute. Also, subject to showing that defendants' product (a hockey helmet) caused tortious injury in Massachusetts, I have concluded that defendants are subject to jurisdiction in the *Maruzzi* case under subsection (d) because they receive substantial revenue from the sale of their products in Massachusetts. As a consequence, if that showing is made as to jurisdiction over the defendants in the *Maruzzi* case, the defendants are also subject to jurisdiction in this case under subsection (b). Facts sufficient to support jurisdiction on these grounds under the long-arm statute will be sufficient also to meet the Constitution's minimum contacts requirements.

Defendants correctly argue that in *Burger King* the Court examined (1) the parties prior negotiations; (2) the terms of the contract itself; and (3) the parties' actual and contemplated course of dealing. (Defs.' Mem. at 9, citing *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185). I cannot sustain, however, defendants' further argument that there is no evidence that the parties in this action contemplated any course of dealing in Massachusetts. (Defs.' Mem. at 9–10.) Unlike the contract in *Burger King*, the insurance contract in this action contemplates a relationship of the contract to an underlying tort claim.

In these circumstances, a court engaged in the due process inquiry may extend its inquiry to contacts incident to the related tort action.

If American Home is liable for defense and indemnification, it is foreseeable that American Home must arrange for counsel's appearance on behalf of defendants wherever it is likely the defendants will be sued. It is likewise foreseeable that defendants, as insureds, will be required to assist and cooperate in the defense.

I conclude that the exercise of personal jurisdiction in this action over defendants Sport and CCM "comports with fair play and substantial justice." *U.S.S. Yachts,* 894 F.2d at 11 (citing *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (citations omitted)).

## IV. JURISDICTION IN MARUZZI

In the absence of a showing of agency relationship or a basis for disregarding corporate entities (*see* Part III.A.1), jurisdiction over Sport and CCM in *Maruzzi* cannot be established under subsection (a) or subsection (c) but may be established under subsection (d) if it is shown that the tort claim arises out of tortious injury to Maruzzi in Massachusetts caused by defendant(s) product (a hockey helmet) made outside this commonwealth.

At a hearing in the *Maruzzi* case in January 1992, I concluded that on the submissions then before the court I should deny the motion to dismiss but without prejudice to later renewal after further discovery as to jurisdictional facts. (Civil Action No. 89–3053–K, Hearing January 17, 1992, Tr. at 8.) Discovery is still proceeding in that action.

In deciding a motion to dismiss for lack of personal jurisdiction under the *prima facie* standard, a court does not decide questions of fact. *Boit,* 967 F.2d at 675. When personal jurisdiction under the long-arm statute depends on establishing elements of the tort claim, plaintiff may, and probably does, have a right to a trial before a jury on those questions. *See, e.g., North American Video Corp. v. Leon,* 480

F.Supp. 213, 216 (D.Mass.1979). Accordingly, in the context of the motion to dismiss for lack of personal jurisdiction in the *Maruzzi* case, Civil Action No. 89–3053–K, I did not decide any genuinely disputed fact question. For the same reason, I do not now decide any fact question in this case. Thus, in this case I leave to future determination, should they at any time appear relevant to jurisdiction over the defendants Sport and CCM, the same questions that were left undecided in *Maruzzi.*

## V. CONCLUSION

In summary, I conclude that plaintiff has made a *prima facie* showing of personal jurisdiction as to each defendant. Accordingly, defendants' motion to dismiss will be denied.

## ORDER

For the foregoing reasons, it is hereby Ordered:

(1) Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 7) is DENIED as to Sport Maska, Inc., without prejudice to its being asserted again at trial.

(2) Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 7) is DENIED as to CCM Holdings (1983), Inc., without prejudice to its being asserted again at trial.