Martin A. DALE, Plaintiff,

v.

H.B. SMITH COMPANY, INC., PCP Realty Trust, Theodore Peer and Mestek, Inc., Defendants.

Civ. A. No. 92–30073–KPN.

United States District Court, D. Massachusetts.

Dec. 6, 1995.

Neva K. Rohan, Jeffrey L. McCormick, Robinson, Donovan, Madden & Barry, Springfield, MA, for Martin A. Dale.

Peter J. Stasz, H.B. Smith Company, Inc., Westfield, MA, for H.B. Smith Company.

Samuel P. Haupt, Harris N. Aaronson, Aaronson & Fuster, Pittsfield, MA, for PCP Realty Trust, Theodore Peer.

Philip J. Ryan, Timothy J. Ryan, Ryan, Martin, Costello, Allison & Leiter, Springfield, MA, John T. Egan, Westfield, MA, for Mestek, Inc.

*MEMORANDUM ON MOTIONS FOR SUMMARY JUDGMENT BROUGHT BY DEFENDANTS H.B. SMITH COMPANY, INC. AND MESTEK, INC.*

(Docket Nos. 71 and 78)

NEIMAN, United States Magistrate Judge.

## I. INTRODUCTION

This action involves an alleged breach of a commercial lease. Plaintiff Martin A. Dale owns a building located on Owen District Road in Westfield, Massachusetts. The site was last occupied by one of the defendants, H.B. Smith Company, Inc. ("Smith"). Pursuant to F.R.Civ.P. 56, Smith and co-defendant Mestek, Inc. ("Mestek") have moved for

summary judgment on Counts IV and V of Plaintiff's First Amended Complaint, respectively. For the reasons set forth below, the Court allows the motion for summary judgment brought by Mestek, but denies the motion for summary judgment brought by Smith.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. FACTUAL BACKGROUND

In 1958, Plaintiff's predecessor in title of the Owen District Road property entered into a lease with International Harvester Company. In 1969, International Harvester and Defendant PCP Realty Trust ("PCP") entered into a written sublease, which gave PCP the option to renew the sublease for four successive five-year terms following the original five-year lease. Under those terms, PCP had sublease rights through early 1994.

In 1980, Plaintiff purchased the property for $140,000, subject to the International Harvester lease and the PCP sublease. He then commenced an action against International Harvester. As a part of the agreement settling the lawsuit, International Harvester withdrew from the lease arrangement and transferred all of its leasehold rights to the Plaintiff. The settlement was effective December 31, 1983. Plaintiff thereafter received approximately $1,500 per month from PCP in connection with the sublease.

Sometime in 1987, PCP entered into a seven year sub-sublease with Smith. The initial term of the sub-sublease was for approximately seven years, terminating in April of 1994. Due apparently to more favorable market conditions, the monthly rental payment to PCP from Smith was approximately $9,500. See Plaintiff's Opposition to Defendant H.B. Smith Company Inc.'s Motion for Summary Judgment (Docket No. 76), at 1.

In 1987 or 1988, Plaintiff visited the Owen District Road property and observed representatives of Smith—which used the facility as the primary assembly point for its residential boiler lines—occupying the premises and doing repairs and work to the building. Plaintiff spoke to Smith representatives and toured his property with them. He then drove to Smith's main office where he met with Edwin E. Smith, its President and Chairman, and introduced himself as the owner of the property.

In September of 1989, Plaintiff filed a summary action in Westfield District Court against Smith, PCP and Defendant Theodore Peer ("Peer"), a trustee of PCP, alleging failure to comply with the provisions of the lease governing renewal. The case was heard by District Court Judge Philip A. Contant on November 3, 1989, who, on June 12, 1990, ruled in favor of Plaintiff. Judge Contant found that, due to PCP's failure to comply with its renewal terms, the lease between PCP and Plaintiff expired on May 31, 1989 and PCP thereafter became a tenant-at-will. Plaintiff's First Amended Complaint (Docket No. 59), Exhibit C.

Smith, PCP and Peer appealed the District Court's decision to the Hampden County Superior Court. On July 24, 1990, Judge Contant ordered, as a condition of the appeal bond, that PCP continue to make the $1,500 monthly payments to Plaintiff as required under the sublease. Judge Contant further ordered that all rental payments by Smith to PCP, approximately $8,000 per month, be placed in escrow pending resolution of the action. That portion of the order was subsequently affirmed in September of 1990 by Judge Raymond R. Cross of the Hampden County Superior Court. See Plaintiff's First Amended Complaint, Exhibits D and E. In January of 1992, the judgment of the Westfield District Court in favor of Plaintiff was entered and he was able to regain possession

---

1. The following background, unless otherwise noted, is derived from Mestek Inc.'s Statement of Material Fact of Record as to Which There is No Genuine Issue to be Tried (Docket No. 79) and Plaintiff, Martin A. Dale's, Response to Mestek, Inc.'s Statement of Material Fact (Docket No. 81), both of which were submitted pursuant to Local Rule 56.1. The facts have been viewed in the light most favorable to Plaintiff. As to Defendant Smith, however, the Court has been somewhat hampered by Smith's failure to submit a

of the premises. Id., at 5.[2]

Upon receiving notice of the 1989 summary process action, Smith began to execute the relocation of its boiler assembly operations at Plaintiff's property to its principal plant at 57 Main Street in Westfield. Mestek claims that Smith "moved quickly to relocate that line to ensure continued operations" and that Smith accomplished its relocation by early 1990. Although Plaintiff disputes Mestek's "subjective assertions," he agrees that, in March of 1990, Smith informed PCP that it was leaving the property.

Mestek claims that Smith notified PCP, in a letter dated January 9, 1991, that its right to quiet enjoyment had been breached and that Peer, as a trustee for PCP, had been provided with a key to the premises. See Mestek's L.R. 56.1 Statement, Exhibit 8. Plaintiff claims that he never received a copy of the January 9, 1991 letter. Instead, Plaintiff states that he was advised of the vacancy of the building in April of 1991.

On or about March 5, 1990, HBS Acquisition Corp.—a Delaware corporation wholly owned by Defendant Mestek—purchased 48.6% of the outstanding common stock of Smith. The acquisition was made by way of a tender offer to Smith's shareholders. In connection with the tender offer, HBS Acquisition learned, through an audited financial statement, of a significant volume of asbestos-related suits in which Smith was named as defendant. No listing was contained in the audited financial statement which disclosed the existence of the 1989 summary process action.

A central figure in the 1990 tender offer was John E. Reed ("Reed"). In addition to being the President, CEO and Chairman of the Board of Mestek, Reed was Smith's longest serving board member, having served on Smith's board since 1950. Reed was also Smith's Clerk until about 1960, the controlling shareholder in Mestek at the time of the tender offer and is currently the President of HBS Acquisition. According to Plaintiff, the shares owned by HBS Acquisition, when added to those owned or controlled by Reed, constitute a majority of Smith's outstanding shares.[3]

At the time of the tender offer, the 1989 summary process action was under consideration by Judge Contant. Edwin E. Smith testified that, in his discussions with Reed, Mestek and HBS Acquisition preceding the tender offer, he was aware of, but never mentioned, the summary process action. Similarly, Reed testified that, despite his position on Smith's Board of Directors and his presence at a July 24, 1989 board meeting at which a possible move from the property was discussed, he has no memory of discussing with Edwin Smith the status of the then pending summary process action. Reed, however, was aware that a controversy existed involving the sublease of the property, and did recall discussions, but not details, regarding whether or not rental monies or rent being paid by Smith should be paid to an entity other than PCP. Reed also claims that he was not aware whether or not Mestek's auditors were informed of Plaintiff's lawsuit at the time the audited financial statements were prepared.

formal L.R. 56.1 statement. See discussion, *infra*.

2.  In 1988, Plaintiff also instituted suit in Hampden County Superior Court (Civ. Action No. 88–580) against PCP alleging, among other things, that the sub-sublease with Smith exceeded the use permitted for the property. The parties report that that suit—which has no bearing on this motion—is still pending.

3.  According to Plaintiff, the tender offer was conditioned upon the tender of at least 87,082 shares (the "minimum tendered shares"). That is the number of shares of H.B. Smith owned by the family of John E. Reed personally or as trustee (19,194 shares hereinafter called the "Reed shares"), a controlling shareholder of Mestek, Inc., equals a majority of the issues and outstanding shares of H.B. Smith common stock on a fully diluted basis. John E. Reed will not tender the Reed shares, but Mr. Reed has agreed to vote his shares as instructed by Board of Directors Purchaser. Purchaser shall be obligated to purchase the minimum tendered shares if that number of shares is properly tendered.
See Plaintiff's L.R. 56.1 Statement, Exhibit B (Reed depo.), Plaintiff's Deposition Exhibit 4 (Offer to Purchase Common Shares, No Par Value, Of H.B. Smith Company, Incorporated), at 2.

During negotiations of the tender offer, Mssrs. Smith and Reed discussed what shares would be covered. Mr. Smith—who spoke to Reed in his capacity as a long time friend and officer of Mestek—stated that his company did not provide financial information to HBS Acquisition prior to the tender offer because Reed served on the Board of Directors of Smith and had full access to all such information. In addition, Reed stated that HBS Acquisition did not inquire whether or not there was pending litigation against Smith because Reed had a long term presence on Smith's Board and felt he had a good grasp of the assets and liabilities of Smith. At Smith's July 16, 1991 board meeting, it was reported that "appeals have been filed in the litigation concerning the North Side [aka Owen District Road] lease, but a favorable outcome is expected." Plaintiff's L.R. 56.1 Statement, Exhibit S.

Mestek claims that Plaintiff first learned of Mestek's involvement in Smith in August of 1991 when he was approached by two real estate brokers who sought to list the property for sale. During this discussion, the brokers advised Plaintiff that they were connected with Reed, that Mestek had acquired Smith and that Mestek was a potential purchaser of the Owen District Road property. Although Plaintiff claims that he became aware of a relationship between Mestek and Smith sometime prior to August of 1991, he cannot "exactly situate the time." Plaintiff's L.R. 56.1 Statement, Exhibit J (Dale deposition), at 87–88.

## B. PROCEDURAL BACKGROUND

On April 1, 1992, Dale filed a four-count complaint against Smith, PCP, Peer and Mestek in this Court generally alleging a breach of contract on a commercial lease. On April 27, 1992, Smith filed a two-count counterclaim. On March 11, 1994, Senior District Judge Frank H. Freedman adopted the recommendations of then Magistrate Judge Michael A. Ponsor and denied the parties' various motions to dismiss the original complaint. In making his ruling, Judge Freedman, pursuant to Fed.R.Civ.P. 9(b) and 15(a), allowed Plaintiff to amend his complaint in order to more specifically set forth a theory of recovery based on piercing Mestek's corporate veil and to allege a cause of action in fraud against Peer.

Plaintiff's First Amended Complaint, the subject of these motions, was filed on March 31, 1994. Counts I through III of Plaintiff's amended complaint are targeted at co-defendants PCP and Peer. In Count I, Plaintiff alleges that, as a result of PCP's failure to properly renew the terms of the lease, PCP was in fact a tenant-at-will starting on May 31, 1989, and is now obligated to pay fair market rental value, totalling approximately $250,000, for the time that it was wrongfully in possession of the property. Plaintiff also seeks damages for PCP's failure to maintain the property. The amended complaint also alleges that Peer, as trustee for PCP, is personally liable for the unpaid rent (Count II) and that Peer acted in a fraudulent and collusive manner as to cause Plaintiff damage (Count III). Count IV alleges that Smith neglected to protect Plaintiff's interest by failing to pay rent directly to him (instead of to PCP) and by failing to maintain and relinquish possession of the property. Count V is directed at Mestek, whom plaintiff claims has been Smith's parent corporation since March 1990, and alleges that Mestek failed to supervise and monitor its subsidiary.

## III. SUMMARY JUDGMENT STANDARD

The role of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties' proof in an effort to determine whether trial is actually required. *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir.1995) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)). Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). See *Flanders & Medeiros, Inc. v. Bogosian*, 65 F.3d 198, 201 (1st Cir.1995); and *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994).

The Court must view the evidence as a whole, rather than in isolation. *Mesnick v.*

General Electric Co., 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The facts must be viewed in the light most favorable to the non-moving party, *Santiago–Ramirez v. Secretary of Dep't of Defense of the United States*, 62 F.3d 445, 446 (1st Cir. 1995), who bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact, *Mendes*, 18 F.3d at 15 (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). It is inappropriate for a court to determine issues of credibility, since a court may not resolve any credibility assessment in favor of the party seeking summary judgment. *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1089 n. 1 (1st Cir.1995) (citing *Velez–Gomez v. SMA Life Assur. Co.*, 8 F.3d 873, 877 (1st Cir.1993)).

Once a summary judgment motion has been filed, the party to whom the motion is directed can defeat it only by showing that a trial-worthy issue exists. *McCarthy*, 56 F.3d at 315 (citing *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995)). The target of the summary judgment motion must affirmatively point to specific facts that demonstrate the existence of an authentic dispute, at least with respect to the issues on which the target bears the ultimate burden of proof. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990). The factual dispute must be "material" and the dispute over it must be "genuine." A "genuine" issue is one that only a finder of fact can properly resolve because it may reasonably be resolved in favor of either party and a "material" issue is one that affects the outcome of the suit. *Collins v. Martella*, 17 F.3d 1, 3 n. 3 (1st Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250, 106 S.Ct. 2505, 2510, 2511, 91 L.Ed.2d 202 (1986)). Mere allegations or conjecture unsupported in the record are insufficient to raise a genuine issue of material fact. *Horta v. Sullivan*, 4 F.3d 2, 11 (1st Cir.1993). Absent a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment. *Jimenez v. Peninsular & Oriental Steam Navigation Co.*, 974 F.2d 221, 223 (1st Cir.1992).

## IV. DISCUSSION

As indicated, there are two motions before the Court: Mestek's motion for summary judgment on Count V of Plaintiff's First Amended Complaint and Smith's motion for summary judgment on Count IV. The Court will discuss each motion separately.

### A. Mestek's Motion

The crux of Mestek's motion for summary judgment concerns the issue of piercing the corporate veil. According to Mestek, it is entitled to judgment because Plaintiff's attempt to pierce Mestek's alleged veil cannot succeed as a matter of law. Viewing the evidence in a light most favorable to Plaintiff, the Court agrees.

In order for a court to disregard separate corporate entities, a plaintiff must meet a very high standard. *American Home Assurance Co. v. Sport Maska, Inc.*, 808 F.Supp. 67, 73 (D.Mass.1992). Under Massachusetts law, disregarding separate corporate entities is the exception, not the rule, *id.*, and is particularly appropriate where there is fraud and injurious consequences from such an intercorporate relationship. *Id.* (citing *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619–20, 233 N.E.2d 748, 752 (1968), and *Logan Equipment Corp. v. Simon Aerials, Inc.*, 736 F.Supp. 1188, 1205 (D.Mass.1990)). See also *Pepsi–Cola Metropolitan Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 15–16 (1st Cir. 1985). A court may pierce a corporate veil only when there is evidence of a "confused intermingling between corporate entities or where one corporation actively and directly participates in the activities of the second corporation, apparently exercising pervasive control." *American Home*, 808 F.Supp. at 73.

United States District Court Judge Robert E. Keeton's decision in *American Home* is instructive. In *American Home*, the plaintiff argued that the alleged control by two corporations of a third corporation, required the court to disregard their separate entities.

Although the third corporation was the wholly-owned subsidiary of one of the others, and all three corporations shared common officers, the court refused to pierce the alleged veil, stating:

> Where the affairs of the corporations are not so intertwined as to demonstrate that the two corporations are, in reality, a single entity, the parent cannot be held responsible on an alter-ego theory.... That a parent and subsidiary share common officers, by itself, is not enough to support the alter-ego theory.

*Id.*, 808 F.Supp. at 73 (citations omitted). Finding no support for plaintiff's claims of alter-ego liability, the court held that corporate veil-piercing could not be used to obtain jurisdiction over the defendants. *Id.*

Here, as in *American Home*, there is no evidence that Mestek and Smith were inextricably intertwined or that Mestek controlled Smith at any relevant time. There is nothing to indicate that Mestek controlled Smith in 1987, when Smith entered into the sub-sublease with PCP, let alone in 1990 when Smith decided to leave the property. Nor has Plaintiff supplied any evidence that Mestek controlled the 1989 summary process action or Smith's subsequent appeal. In fact, it is apparent that the summary process action was an immaterial concern of a corporation that had annual sales of approximately $34 million and a backlog of some 1,500 asbestos cases in which it was named a defendant. See Mestek's Motion for Summary Judgment, at 8.

In addition, there is no evidence to indicate a confused intermingling of non-business activity, assets or management between Mestek and Smith. See *Pepsi Cola*, 754 F.2d at 15 (citing *My Bread*, 233 N.E.2d at 752). Unlike *My Bread*—which involved a string of closely-held corporations in which the stockholders, officers and directors were all members of same family and in which the corporations were all doing business as "Cumberland Farms"—Mestek (a Pennsylvania corporation traded on the New York Stock Exchange) and Smith (a Massachusetts corporation) operate under different officers and produce different products under their own independent brand names.[4]

At best, Plaintiff can show some limited common ownership between Smith and Mestek through the person of John Reed. See *Pepsi–Cola*, 754 F.2d at 15 (indicating common ownership as one of a host of factors in determining whether to pierce or not). However—despite the fact "[t]hat a parent and subsidiary share common officers, by itself, is not enough to support the alter-ego theory," *American Home*, 808 F.Supp. at 73—evidence of Reed's involvement in Smith is quite thin. Prior to 1990, Reed was no more than a Smith board member and its former clerk. As the controlling shareholder of Mestek, he owns less than one-half of Smith's stock. Even an aggregation of the shares of Smith owned by Reed with those controlled by HBS Acquisition indicates less than full ownership. Compare *id.* (refusing to pierce even though corporation was a wholly-owned subsidiary).

Plaintiff's other attempts to use Reed as a catalyst to get at Mestek are similarly without merit. Plaintiff argues that Mestek, "through its *representative* John Reed, 'investigated' the purchase of H.B. Smith stock ... [and was aware] of the lawsuit with the plaintiff but failed to exercise his/its control to assure the plaintiff was receiving, or had available to receive, amounts due him for fair rental value of his property." Plaintiff's Opposition, at 8–9 (emphasis added). Plaintiff also refers to Reed as the "owner and operator" of Mestek and concludes "that Reed, through his various corporate incarnations, was guaranteeing the security of his holdings and exercising control over them." Id., at 8. Despite Plaintiff's assertions, Mestek is not owned by Reed and there is no evidence that Mestek acted based upon Reed's desire to guarantee the security of his holdings. Even assuming that Plaintiff's characterization of Reed's activity is true, there is no evidence that it was inappropriate. Moreover, as indi-

---

4. Lack of confusion is further evidenced by Plaintiff's activity in 1987 when he toured his property with a younger Mr. "Max" Smith, observed Smith's activity on site and travelled to Smith's principal headquarters where he met with Edwin E. Smith, the company's President and Chairman of the Board. See Mestek's L.R. 56.1 Statement, Exhibit 1 (Dale deposition), at 128–34.

cated, there was no obligation upon Mestek to exercise control and assure that Plaintiff was receiving monies he claimed he was owed. In fact, that Mestek did not exercise the active and pervasive control Plaintiff claims it should have is further reason to decline to pierce any alleged corporate veil.

■ Other than some common ownership, Plaintiff has offered no evidence on any of the other *Pepsi–Cola* factors: thin capitalization; non-observance of corporate formalities; absence of corporate records; no payment of dividends; insolvency at the time of the litigated transaction; siphoning away of corporate assets by the dominant shareholder; non-functioning of officers and directors; and use of the corporation for transactions of the dominant shareholders or in promoting fraud. In fact, Plaintiff makes no allegation and produces no evidence of fraud by either Smith or Mestek. Viewing the evidence as a whole, there is simply no dispute authentic enough which can justify or warrant the Court's use of the unusual remedy of piercing Mestek's corporate veil. See *Pepsi Cola*, 754 F.2d at 15–16.[5]

In sum, no trial-worthy issue exists. See *McIntosh*, 71 F.3d at 33 (noting that non-moving party must produce specific facts "in order to demonstrate the presence of a trial-worthy issue and thereby deflect the sharp blade of the summary judgment as"). Given the absence of any genuine issue of material fact, the Court finds, as a matter of law, that Plaintiff's claim against Mestek must fail. Mestek is thus entitled to summary judgment on Count V of Plaintiff's First Amended Complaint.

## B. Smith's Motion

■ Smith's motion for summary judgment must be denied on procedural grounds for it fails to "include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation." L.R. 56.1. The absence of such a statement "constitutes grounds for denial of the motion." Id. See *Rosario v. Brooks*, 877 F.Supp. 765, 769 (D.Mass.1995); and *Ares–Serono, Inc. v. Organon Int'l B.V.*, 151 F.R.D. 215, 220 (D.Mass.1993).[6]

To its credit, Smith does include in its memorandum of law a section labelled "Factual Background and Procedural History" (hereinafter "Background") in which it attempts to outline the posture of the case and in which it concludes that the underlying facts "are largely undisputed". Smith even supports several paragraphs of its Background by reference, or at least allusion, to the complaint, a prior motion by Plaintiff, and two letters which are attached as Exhibits "A" and "B" to Smith's motion. Despite Smith's intentions, however, no page numbers are given, several paragraphs are wholly unsupported and there is no reference to sworn affidavits and/or depositions. See L.R. 56.1. The two letters referred to by Smith are merely correspondence from Smith and Dale's attorneys and a third and fourth letter (Exhibits "C" and "D") are each mentioned only once in Smith's "Argument" section and never in the Background. In addition, several paragraphs of the Background are not factual or procedural, but are actually argumentative. See *In re Atlantic Financial Management, Inc., Sec. Litigation*, 718 F.Supp. 1003, 1007 (D.Mass.1988) (denying summary judgment where, despite L.R. 56.1 (formerly L.R. 18), "many of defendants' assertions are not facts, but conclusions, representing inferences defendants hope the finders of fact will draw").

**5.** Mestek also argues (1) that Plaintiff's claim is estopped by virtue of Judge Contant's 1990 appeal bond order; (2) that Smith's board of directors, not its shareholders (e.g. Mestek), are responsible for its affairs; (3) that Plaintiff's action is barred by the doctrine of claim preclusion; and (4) that Plaintiff has failed to satisfy diversity jurisdictional requirements. Because the Court grants Mestek's motion for summary judgment based on its veil-piercing argument, it need not address these additional claims.

**6.** The First Circuit most recently cited L.R. 56.1 in *Carreiro v. Rhodes Gill & Co., Ltd.*, 68 F.3d 1443, 1451 n. 3 (1st Cir.1995) (citing *Stepanischen v. Merchants Despatch Tranp. Corp.*, 722 F.2d 922, 930 (1st Cir.1983) (sanctioning such local rules that facilitate analysis of summary judgment motions)).

Smith's deficiency is more than a "highly technical and nonprejudicial" error. Compare *City of Waltham v. United States Postal Serv.,* 11 F.3d 235, 243 (1st Cir.1993) (defendant's failure to attach a duplicate L.R. 56.1 statement—already attached to its own motion for summary judgment—to its opposition to plaintiff's motion for summary judgment, made no legal difference). It goes to the heart of the summary judgment rule and the Supreme Court's opinion in *Celotex,* 477 U.S. 317, 106 S.Ct. 2548. In *Celotex,* the Supreme Court held that the summary judgment burden on a moving party such as Smith "may be discharged by 'showing'—that is, *pointing out to the district court*—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554 (emphasis added). As Justice White's concurring opinion notes, "[i]t is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." *Id.* at 328, 106 S.Ct. at 2555 (White, J., concurring). See also *United Paperworkers Int'l Union, Local 14 v. International Paper Co.,* 64 F.3d 28, 31 (1st Cir.1995) ("party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists").

Smith's failure to meet its summary judgment burden "has resulted in both confusion for the court and possible prejudice to the opposing party." *Abrazinski v. DuBois,* 876 F.Supp. 313, 319 (D.Mass.1995). "It is a bedrock rule of civil litigation that a party who has exercised due diligence is entitled to be apprised of his opponent's theory of the case, and that rule has particular force in the summary judgment milieu." *Stella v. Town of Tewksbury,* 4 F.3d 53, 56 (1st Cir.1993). Although Smith may well have a strong case, its omission has made it difficult for Plaintiff to meet Smith's allegations head-on. The complex nature of this case—a point that even Smith acknowledges—mandates adherence to the rule. See *Broderick v. Roache,* 751 F.Supp. 290, 295 (D.Mass.1990) (requiring strict compliance with L.R. 56.1 "in the light of the complexity of law ... apparent in the facts of this case").

## V. CONCLUSION

For the foregoing reasons, Mestek's motion for summary judgment is ALLOWED and Smith's motion for summary judgment is DENIED. A separate order shall issue.