**HILLER CRANBERRY PRODUCTS, INC., Plaintiff,**

**v.**

**KOPLOVSKY FOODS, INC., Edward M. Koplovsky and Clermont, Inc., Defendants.**

**Clermont, Inc., Reach-and-Apply, Defendant.**

**First Trade Union Savings Bank, Trustee.**

**Civil Action No. 98–10431–EFH.**

United States District Court, D. Massachusetts.

April 17, 1998.

Evan Slavitt, Andrew A. Honegger, Gadsby & Hannah LLP, Boston, MA, for Plaintiff.

John J. Monaghan, Gordon P. Katz, Sherburne, Powers & Needham, Boston, MA, for Defendants.

### MEMORANDUM

HARRINGTON, District Judge.

This cause of action involves $4.4 million worth of cranberries delivered by Plaintiff Hiller Cranberry Products, Inc. ("Hiller"), to Koplovsky Foods, Inc. ("KFI"). The cranberries were subsequently delivered by KFI to Clermont, Inc. ("Clermont"). Plaintiff has not received payment from KFI and KFI has not received payment from Clermont.[1] Plaintiff's complaint asserts actions under the Perishable Agricultural Commodities Act ("PACA"), misrepresentation, the Fraudulent Conveyance Act, and the Massachusetts Unfair Trade Practices Act against KFI, Clermont, and Edward M. Koplovsky. Plaintiff filed a motion seeking a preliminary injunction and writ of attachments against each of the defendants. The Court issued a Trustee Writ on March 11, 1998 against each of the defendants. The Court heard oral argument on March 26, 1998 regarding the motion for a preliminary injunction and writ of attachments against each of the defendants. The Court heard further oral argument on April 2, 1998 regarding the potential liability of Clermont and Edward M. Koplovsky under PACA and as alter egos of KFI.

Pursuant to Rule 64 of the Federal Rules of Civil Procedure, the remedy of prejudgment attachment is available "under the circumstances and in the manner provided by the law of the state in which the district court is held." In Massachusetts, the substantive standard and the procedure governing attachments are contained in Rule 4.1 of the Massachusetts Rules of Civil Procedure. It provides that an order approving attachment "may be entered only after notice to the defendant and hearing and upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment." Mass.R.Civ.P. 4.1(c). That rule also requires the movant to submit affidavits setting forth "specific facts sufficient to warrant the required findings" based upon the affiant's own information or belief. Mass. R.Civ.P. 4.1(c) & (h). "[T]he central question on the motion for approval of attachment is whether plaintiffs are likely to prevail on the merits and obtain damages in the necessary amount." *Anderson Foreign Motors Inc. v. New England Toyota Distributor, Inc.,* 475 F.Supp. 973, 978 (D.Mass.1979).

Pursuant to Fed.R.Civ.P. 65, plaintiff seeks a preliminary injunction against defendants restricting all transfer of assets except in the ordinary course of business. A party seeking preliminary injunctive relief must prove: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; and (4) a fit (or, at least, a lack of friction) between the injunction and the public interest. *E.E.O.C. v. Astra USA, Inc.,* 94 F.3d 738, 742 (1st Cir.1996).

After review of the parties' memoranda and oral arguments, the Court makes the following findings: (1) plaintiff has a reasonable likelihood of success on the merits against KFI under the contract for goods sold and delivered; (2) plaintiff has a reasonable likelihood of success on the merits against Clermont under the theory of reach and apply; and (3) plaintiff does not have a reasonable likelihood of success on the merits

---

1. KFI and Clermont are unable to pay for the cranberries at this time due to the precipitous decline in the price of cranberry juice concentrate.

under PACA or under an alter ego theory of liability against Clermont and Edward M. Koplovsky.

The Court issued an Order on April 9, 1998[2] granting a preliminary injunction against KFI and continuing the Writs of Attachment in the amount of $4,440,494.07 upon all assets of KFI. The Order also enjoined Reach–and–Apply Defendant Clermont from paying any amount due by it to KFI and enjoined KFI from receiving any of its approximately $10 million receivable from Clermont. The amount payable to KFI from Clermont is subject to an equitable attachment in favor of plaintiff in the amount of $4,440,494.07. The motion seeking a preliminary injunction and writ of attachments against Edward M. Koplovsky was not granted.

## I. LIABILITY OF DEFENDANTS CLERMONT AND EDWARD M. KOPLOVSKY UNDER PACA

This motion raises a novel question regarding eligibility for trust protection under PACA, a statute which has been litigated only rarely in this Circuit. Plaintiff contends that Clermont is liable as a PACA broker holding plaintiff's assets in trust under 7 U.S.C. § 499e(c). Plaintiff further argues that Edward M. Koplovsky is liable as a PACA trustee who owed plaintiff a fiduciary duty to protect the trust assets under 7 U.S.C. § 499b. A threshold requirement for a reasonable likelihood of success on the merits under PACA is plaintiff's eligibility for PACA protection. Defendants argue that plaintiff is not entitled to trust protection because the Supply Agreement between plaintiff and KFI contained payment periods in excess of 30 days, in violation of regulations promulgated by the Secretary of Agriculture.

Section 499e(c)(3)(i) provides that the Secretary of Agriculture shall promulgate regulations providing the maximum time upon which parties may agree for payment and still have the benefit of PACA protection. The Secretary issued regulations that establish "the time prescribed by which payment must be made" under Section 499e(c)(3)(i) as

between ten and twenty days, with ten days as the standard period. 7 C.F.R. § 46.2(aa). The regulations further provide, with respect to private agreements under Section 499e(c)(3)(ii), that "[t]he maximum time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is 30 days after receipt and acceptance of the commodities . . . ." 7 C.F.R. § 46.46(e)(2).

The eligibility of PACA trust protections based on the terms of the maximum time for payment presents a question of first impression in this Circuit. All of the other circuits addressing the question have upheld the thirty-day maximum period for private agreements as being a permissible construction of the statute. *In re Altabon Foods, Inc.*, 998 F.2d 718, 720 (9th Cir.1993); *In re Lombardo Fruit and Produce Co.*, 12 F.3d 806, 809 (8th Cir.1994); *In re Davis Distributors, Inc.*, 861 F.2d 416, 417–18 (4th Cir. 1988); *Mid–Valley Produce Corp. v. 4–XXX Produce Corp.*, 819 F.Supp. 209, 211 (E.D.N.Y.1993). The legislative history unambiguously demonstrates that Congress intended the Department of Agriculture to set a maximum period under which private agreements may extend the payment period. *In re Altabon Foods, Inc.*, 998 F.2d at 720. These courts have held that a payment period extending beyond the thirty-day maximum allowed by the regulations deprives the supplier of PACA trust protection. The Court follows these other circuits in holding that any written agreement extending the payment period beyond thirty days would negate the statutory trust provisions.

The facts in this case are that Hiller shipped $6,925,455.58 worth of cranberries to KFI between September 25, 1997 and November 25, 1997. The Supply Agreement provided that 75 percent of the purchase price was to be paid within ten days of delivery with the remaining 12.5 percent paid by January 1 of the following year and the balance no later than February 1 of the same year. KFI paid Hiller approximately $2.7 million on the Supply Agreement.

**2.** KFI and Clermont do not challenge this Order.

The terms of the Supply Agreement allow one-quarter of the purchase price to be paid well in excess of the thirty-day maximum time for payment period established by 7 C.F.R. § 46.46(e)(2). These payment terms are much longer than the 45 to 60 days provided in the contract in *In re Altabon Foods* which the Ninth Circuit found constituted a waiver of trust protection. *In re Altabon Foods, Inc.*, 998 F.2d at 718. The terms of the Supply Agreement vary slightly from those in *In re Altabon* and *In re Lombardo* because in the instant case a portion of the purchase price is required to be paid within the thirty-day period. The regulations define "full payment promptly" as "specifying the period of time for making payment without committing a violation of the act." 7 C.F.R. § 46.2(aa). Reading "full payment promptly" in connection with die "maximum time for payment" in Section 46.46(e)(2) indicates to the Court that the entire payment must be made within the thirty-day period. In order, thus, to be eligible for the protection of the PACA statutory trust, the written agreement must comply with PACA's maximum payment terms. Therefore, the Court finds that there is not a reasonable likelihood of success on the merits against Clermont and Edward M. Koplovsky under PACA because the Supply Agreement contained payment terms beyond the thirty-day maximum period.

## II. LIABILITY OF CLERMONT AND EDWARD M. KOPLOVSKY UNDER ALTER EGO THEORY

■ Plaintiff argues that Clermont is liable as the alter ego of KFI and that the corporate veil of KFI should be pierced to hold Edward M. Koplovsky personally liable.[3] To support this contention, plaintiff must meet a very high standard. *American Home Assurance Company v. Sport Maska, Inc.*, 808 F.Supp. 67, 73 (D.Mass.1992). Under Massachusetts law, disregarding separate corporate entities is the exception, not the rule. *Dale v. H.B. Smith Co., Inc.*, 910

F.Supp. 14, 18 (D.Mass.1995). Piercing the corporate veil is permitted only (1) where one corporation actively and directly participates in the activities of the second corporation, apparently exercising pervasive control, and there is some fraudulent or injurious consequence of the intercorporate relationship, or (2) there is a confused intermingling between corporate entities engaged in a common enterprise. *My Bread Baking Co. v. Cumberland Farms, Inc., et al.*, 353 Mass. 614, 618–19, 233 N.E.2d 748 (1968). The Court rules that this is not one of those rare situations where equity requires the corporate veil to be pierced. *Birbara v. Locke*, 99 F.3d 1233, 1239 (1st Cir.1996) ("Under Massachusetts law, the corporate veil will only be pierced in rare situations.").

■ The Court of Appeals for the First Circuit in *Pepsi–Cola Metropolitan Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 15 (1st Cir.1985), elucidates some factors that may be considered when engaging in an alter ego analysis. In determining whether to pierce the corporate veil, Massachusetts courts consider twelve factors: (1) common ownership, (2) pervasive control, (3) confused intermingling of business activity, assets or management, (4) insufficient capitalization for purposes of the corporate undertaking, (5) nonobservance of corporate formalities, (6) nonpayment of dividends, (7) insolvency of corporation at the time of the transaction, (8) siphoning of corporate funds by the dominant shareholders, (9) non-functioning of officers and directors other than the shareholders, (10) absence of corporate records, (11) use of the corporation for transactions of the dominant shareholders, and (12) use of the corporation in promoting fraud. *Id.* The Court of Appeals for the First Circuit in *Pepsi–Cola* amplifies the analysis of the Massachusetts Supreme Judicial Court in *My Bread*, but the Court of Appeals does not say how many factors are necessary to justify piercing the corporate veil. The Court reviews the evidence in fight of the two-prong general anal-

---

**3.** The doctrine is known by various names, including "piercing the corporate veil," "disregarding the corporate entity," and the "alter ego" theories. This Memorandum uses these terms interchangeably for the general idea of going behind the corporate form, either to hold a corporate shareholder responsible for die acts or debts of a corporation or to hold one corporation responsible for the acts or debts of another corporation.

ysis set forth in *My Bread* and the factors set forth in *Pepsi–Cola.*

## A. *Liability of Clermont*

■ In support of the first prong of the My Bread test, the primary evidence which plaintiff relies upon is Edward M. Koplovsky's control of KFI and Clermont. It is undisputed that Edward M. Koplovsky is the dominant shareholder of KFI and Clermont and exercises pervasive control over both companies. These two factors alone, however, are not enough to support the alter ego theory. *Giuliano v. Nations Title, Inc.,* 938 F.Supp. 78, 81–83 (D.Mass.1996) (declining to pierce the corporate veil where plaintiff could establish only two *Pepsi* factors); *American Home Assurance Company v. Sport Maska, Inc.,* 808 F.Supp. 67, 73 (D.Mass.1992) (declining to pierce the corporate veil where parent and subsidiary shared common officers); *Evans v. Multicon Constr. Corp.,* 30 Mass.App.Ct. 728, 732–738, 574 N.E.2d 395, *rev. denied* 410 Mass. 1104, 577 N.E.2d 309 (1991), (declining to pierce corporate veil where plaintiff could establish only four *Pepsi* factors). Under the first prong of the My Bread test, plaintiff must show a "fraudulent or injurious consequence of the intercorporate relationship." *My Bread,* 353 Mass. at 619, 233 N.E.2d 748.

■ Plaintiff contends that Edward M. Koplovsky's statements to plaintiff with respect to KFI's intention to pay its outstanding invoices constituted misrepresentation and unfair trade practices. The alleged fraud must pertain to the intercorporate relationship, however, *Birbara,* 99 F.3d at 1240. The Court of Appeals for the First Circuit in *Birbara* stated that "[e]ven assuming this misrepresentation might have supported fraud or unfair practices claims against the defendants ... we think plaintiff's argument misses the point of the corporate disregard doctrine." *Id.* The court in *Birbara* was concerned with those instances where plaintiff had been misled about the identity of the corporate entity with whom he was dealing. *Id.* In the instant case there was no failure to make clear which corporation was taking action nor any failure to observe with care the corporate form. The evidence demonstrates

that plaintiff was aware that KFI, Clermont, and Edward M. Koplovsky were three separate entities: two corporations and an individual. Plaintiff had transacted business with KFI for a number of years and knew of its affiliate relationship with Clermont. The Supply Agreement specifically identifies KFI as the "buyer," and then, on the signature page, fists separately Clermont and Edward M. Koplovsky who signed the agreement for purposes of the non-solicitation provision only. The "element of dubious manipulation and contrivance, ... such that corporate identities are confused and third parties cannot be quite certain with what they are dealing" which Massachusetts courts have emphasized is not present in this case. *Evans,* 574 N.E.2d at 400.

As to the second prong of the *My Bread* test, plaintiff's argument that there was a "confused intermingling" of KFI's and Clermont's activities with "substantial disregard of the separate nature of the corporate entities" or "serious ambiguity about the manner and capacity in which the [two] corporations and their respective representatives [were] acting," is similarly unpersuasive. *My Bread,* 353 Mass. at 619, 233 N.E.2d 748. KFI and Clermont properly maintained their own, separate corporate records, filed separate tax returns, and observed corporate formalities. Plaintiff contends that confused intermingling was evident because Clermont and KFI shared office space and delivery trucks in Massachusetts. A sharing of office space does not constitute evidence of inextricably intertwined corporations which the Supreme Judicial Court was concerned with in *My Bread.* In *My Bread* the defendants operated a string of corporations all doing business as "Cumberland Farms" with the same address and headquarters. In contrast, according to plaintiff's amended complaint, dated April 1, 1998, KFI is a Massachusetts corporation with a principal place of business in Duxbury, Massachusetts, and Clermont is an Oregon corporation with a principal place of business in Cornelius, Oregon. Moreover, there is no evidence that funds were used interchangeably by KFI and Clermont, which is at the essence of confused corporate intermingling. The Court of Appeals First Circuit's decision in *Pepsi–Cola* is

illustrative of intermingling by corporations which did not observe corporate formalities, kept no records, and used funds interchangeably. *Pepsi–Cola,* 754 F.2d at 15–16.

Plaintiff argues that KFI has no financial independence from Clermont. The Supply Agreement between KFI and plaintiff was for three years covering the period from 1996 through 1998. Plaintiff knew of KFI's business relationship with Clermont. There is no evidence that at the time of the Agreement KFI was thinly capitalized or insolvent. In 1996, the first year of the Supply Agreement, KFI fully performed its financial obligations to plaintiff. In the second year of the Supply Agreement KFI paid $2.7 million to plaintiff during September and October of 1997. At the end of October 1997 KFI encountered financial difficulties after the precipitous decline in the price of cranberry juice concentrate. At this time KFI had an account receivable in excess of $10 million from Clermont, The precipitous market price reduction in cranberry juice concentrate resulted in a decrease in Clermont's inventory which affected its bank line of credit and prevented its payment to KFI.

### B. *Liability of Edward M. Koplovsky*

Although corporate and individual defendants present slightly different questions under the corporate disregard doctrine, this Circuit has applied the same analysis to both. *Birbara,* 99 F.3d at 1237 n. 3. *My Bread* contains dicta that a "corporation or other person controlling a corporation and directing, or participating actively in its operations may become subject to civil or criminal liability on principles of agency or causation." *My Bread,* 353 Mass. at 620, 233 N.E.2d 748. The courts have generally held that shareholders may be held liable where they control the operation of the corporation and run it for their personal benefit, and where justice requires that the separate existence of the corporation be ignored. *Pepsi–Cola,* 754 F.2d at 15, 16.

■ The primary evidence which plaintiff relies on to establish KFI as Edward M. Koplovsky's alter ego is his pervasive control of KFI and Clermont and the historical business relationship between plaintiff and Edward M. Koplovsky. Edward M. Koplovsky is KFI's corporate president and treasurer. Edward M. Koplovsky is Clermont's corporate president and secretary. He owns eighty-five percent of the shares of Clermont stock. Edward M. Koplovsky transacted business with plaintiff as the president of KFI. The Supply Agreement specifically identifies KFI as the "buyer," and Edward M. Koplovsky signed the agreement as President of KFI. He also signed the agreement separately, individually and as President of Clermont, for purposes of the non-solicitation provision only.

Plaintiff makes no claim that Edward M. Koplovsky siphoned away KFI's assets for his own personal use. In contrast when the Court of Appeals for the First Circuit in *Pepsi–Cola* upheld a jury's decision to pierce the corporate veil there was substantial evidence of misuse of corporate finds by the individual defendant for his personal use. *Id.* at 14–16.

■ Plaintiff argues that Edward M. Koplovsky fraudulently uses KFI to insulate himself and Clermont from liability. Plaintiff shipped $6.9 million worth of cranberries to KFI. KFI transferred the cranberries to Clermont for an account receivable. KFI made payments towards those invoices totaling $2.7 million to plaintiff before encountering any financial difficulty. The risk that a defendant without fraud and in the normal course of business operations may become unable to answer to a judgment is inherent in any civil litigation. The Court of Appeals for the First Circuit in *Miller v. Honda Motor Co.,* 779 F.2d 769, 773 (1st Cir.1985), stated that "there is nothing fraudulent or against public policy in limiting one's liability by the appropriate use of corporate insulation." In the absence of the use of corporate funds for his personal benefit, the Court will not pierce the corporate veil to hold an individual shareholder liable. Plaintiff was well aware that Edward M. Koplovsky negotiated the Supply Agreement on behalf of KFI.

### C. *Review*

In review, the majority of the *Pepsi–Cola* factors cut against piercing the corporate veil

for both Clermont and Edward M. Koplovsky. *Pepsi–Cola*, 754 F.2d at 15–16. There was no confused intermingling of business activity, assets or management. KFI was not thinly capitalized or insolvent at the time of the transaction. KFI and Clermont properly maintained their own, separate corporate records, filed separate tax returns, and observed corporate formalities. Plaintiff did not introduce evidence of non-payment of dividends or non-functioning of corporate officers or directors. There was no siphoning of corporate funds by Edward M. Koplovsky or any other shareholders. KFI was not used in promoting fraud. Therefore, the Court finds the evidence insufficient to warrant piercing KFI's corporate veil to reach Clermont's assets or the individual defendant's assets under the stringent requirements set forth by Massachusetts law.

### III. MISREPRESENTATION, UNFAIR TRADE PRACTICES, AND FRAUDULENT CONVEYANCE CLAIMS

 The Court finds that plaintiff does not have a reasonable likelihood of success on the merits under the misrepresentation, unfair trade practices or a fraudulent conveyance claims against either Clermont or Edward M. Koplovsky. Plaintiff contends that Koplovsky misrepresented KFI's intention as to payment of outstanding invoices. This alleged misrepresentation is also the basis of the unfair trade practices cause of action under Massachusetts General Laws ch. 93A. Any alleged misstatements made by Koplovsky, which he vigorously disputes, were in his capacity as president of KFI. The Court has determined that Koplovsky is not personally liable for his acts as a corporate officer. Likewise the Court has ruled that Clermont is not liable as an alter ego of KFI.

 In both papers and oral argument the parties appeared to have argued the liability of Edward M. Koplovsky solely under the alter ego theory. Distinct from the analysis under the alter ego theory, the Court finds that there is not a reasonable likelihood of success on the merits against Edward M. Koplovsky as an individual. *Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.*, 764 F.2d 928, 938 (1st Cir.1985); *see* 3A

Fletcher Cyclopedia of the Law of Private Corporations, § 1143, at 228–230 (1975). Plaintiff has failed to allege with particularity the elements of a misrepresentation cause of action. *Metropolitan Life Ins. Co. v. Ditmore*, 729 F.2d 1, 4 (1st Cir.1984) (quoting *Barrett Associates, Inc. v. Aronson*, 346 Mass. 150, 152, 190 N.E.2d 867 (1963)). When a promise is made in good faith with the expectation of carrying it out, the fact that it subsequently is broken gives rise to no cause of action for deceit. Statements of present intention as to future conduct, however, may be the basis for a fraud action if the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage. *McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 709, 563 N.E.2d 188 (1990).

The specific dates of the deliveries of cranberries and statements of assurance by Edward M. Koplovsky are not detailed in the complaint nor supporting affidavits. It is clear that between September 25, 1997 and November 25, 1997 plaintiff delivered $6.9 million in cranberries to KFI and KFI made four separate payments totaling $2.7 million to plaintiff from October 4 to November 5, 1997. The last payment of $900,000 was made after the decline in market price for cranberry concentrate which parties agree was well known by October 31, 1997. In the week following November 5, Edward M. Koplovsky indicated that he was unsure whether KFI would be able to make future payments. It is very difficult to prove a defendant's present intention relating to future conduct. This difficulty coupled with the undisputed fact that payments were made up and after the decline in market price weigh against a finding of a reasonable likelihood of success. Moreover, without the PACA claim there is no federal subject matter jurisdiction under 28 U.S.C. § 1331 nor is there complete diversity under Section 1332 because plaintiff, KFI, and Edward M. Koplovsky are citizens of Massachusetts.

 Plaintiff also contends that Edward M. Koplovsky made fraudulent conveyances of three parcels of property to third party entities in violation of Massachusetts General Laws ch. 109A, § 5(a). The Fraudu-

lent Conveyance Act furnishes an expeditious method whereby creditors may satisfy their claims, but it does not create claims. *Blumenthal v. Blumenthal*, 303 Mass. 275, 21 N.E.2d 244 (1939). The Court has ruled that there is not a reasonable likelihood of success on the merits against Edward M. Koplovsky individually, *a priori* there can be no reasonable likelihood of success on the fraudulent conveyance claim.

### CONCLUSION

All attachments *previously* approved by this Court against Clermont and Edward M. Koplovsky in favor of the plaintiff are dissolved, and all *previously* approved restraining orders and other injunctive relief against Clermont and Edward M. Koplovsky are vacated. The Court Order of Preliminary Injunction and Issuance of Attachment issued on April 9, 1998 shall continue in effect. The Trustee Writ, approved and issued by the Court on March 11, 1998, shall continue in effect *only* against the Defendant KFI.