Charles R. JOHNSON, General Partner of Johnson Cranberry Limited Partnership, and Francis V. Johnson a/k/a Van Johnson, Plaintiffs,

v.

KOPLOVSKY FOODS, INC., Edward M. Koplovsky, Elaine Koplovsky, Clermont, Inc., Braintree Hill Corporation General Partner of Braintree Hill Limited Partnership, and Zero Franklin Street Corporation, General Partner of Zero Franklin Street Limited Partnership, Defendants.

Civil Action No. 98–10536–EFH.

United States District Court, D. Massachusetts.

May 5, 1998.

---

Andrew M. Osborne, Osborne & Visconti, Dedham, MA, for Plaintiffs.

John J. Monaghan, Gordon P. Katz, Sherburne, Powers & Needham, Boston, MA, for Defendants.

Joseph F. Ryan, James W. Stoll, Anthony L. Gray, Anthony L. Gray, Brown, Rudnick, Freed & Gesmer, Boston, MA, for Congress Financial Corporation (Northwest), Movant.

### *MEMORANDUM*

HARRINGTON, District Judge.

This is an action for damages and injunctive relief arising from the failure of Koplovsky Foods, Inc. ("KFI") and Clermont, Inc. ("Clermont") to make payment for cranberries sold and delivered to them by Plaintiffs Francis V. Johnson and Charles R. Johnson. Plaintiffs' complaint assert actions under contract, the Perishable Agricultural Commodities Act ("PACA"), the Fraudulent Conveyance Act, and the Massachusetts Unfair Trade Practices Act against KFI, Clermont, Braintree Hill Corporation, Zero Franklin Corporation, Elaine Koplovsky and Edward M. Koplovsky. Edward M. Koplovsky is an owner and majority shareholder of KFI and Clermont. Elaine Koplovsky is an officer of KFI. Edward and Elaine Koplovsky are officers of Zero Franklin Street

Corporation and Braintree Hill Corporation. These corporations are the general partners, respectively, of Zero Franklin Street Limited Partnership and Braintree Hill Limited Partnership. Plaintiffs filed a motion seeking a preliminary injunction and writ of attachments against each of the defendants.

After review of the parties' memoranda and oral arguments, the Court makes the following findings: (1) Francis V. Johnson has a substantial likelihood of success on the merits against KFI under the contract for goods sold and delivered and against Clermont under the theory of reach and apply; (2) Charles R. Johnson has a substantial likelihood of success on the merits against Clermont under the contract for goods sold and delivered; (3) plaintiffs do not have a reasonable likelihood of success on the merits under PACA; (4) plaintiffs have a reasonable likelihood of success on the merits that Clermont and KFI are alter egos; (5) plaintiffs do not have a reasonable likelihood of success on the merits that Zero Franklin and Braintree Hill are the alter egos of Elaine and Edward M. Koplovsky; (6) plaintiffs do not have a reasonable likelihood of success on the merits under Mass.Gen.L. ch. 93A for unfair and deceptive acts against KFI, Clermont, Edward M. Koplovsky and Elaine Koplovsky; and (7) plaintiffs do not have a reasonable likelihood of success on the merits under the Fraudulent Conveyance Act for transfer of the cranberry crop to Clermont and land parcels to the real estate limited partnerships.

The Court issued an Order on May 1, 1998 granting a preliminary injunction against KFI and Clermont and continuing the Writs of Attachment in the amount of $1,750,000.00 upon all assets of KFI and Clermont. The Order also enjoined Reach–and–Apply Defendant Clermont from paying any amount due by it to KFI and enjoined KFI from receiving any of its approximately $10 million receivable from Clermont. The amount payable to KFI from Clermont is subject to an equitable attachment in favor of plaintiff in the amount of $277,014.60. The motion seeking a preliminary injunction and writ of at-

tachments against Edward M. Koplovsky, Elaine Koplovsky, Braintree Hill and Zero Franklin was not granted.

## I. *Legal Standard*

■ Pursuant to Rule 64 of the Federal Rules of Civil Procedure, the remedy of prejudgment attachment is available "under the circumstances and in the manner provided by the law of the state in which the district court is held." In Massachusetts, the substantive standard and the procedure governing attachments are contained in Rule 4.1 of the Massachusetts Rules of Civil Procedure. It provides that an order approving attachment "may be entered only after notice to the defendant and hearing and upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment." Mass.R.Civ.P.4.1(c). That rule also requires the movant to submit affidavits setting forth "specific facts sufficient to warrant the required findings" based upon the affiant's own information or belief. Mass. R.Civ.P. 4.1(c) & (h). "[T]he central question on the motion for approval of attachment is whether plaintiffs are likely to prevail on the merits and obtain damages in the necessary amount." *Anderson Foreign Motors, Inc. v. New England Toyota Distributor, Inc.,* 475 F.Supp. 973, 978 (D.Mass.1979).

■ Pursuant to Fed.R.Civ.P. 65, plaintiffs seek a preliminary injunction against defendants restricting all transfer of assets except in the ordinary course of business. A party seeking preliminary injunctive relief must prove: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld;[1] (3) a favorable balance of hardships; and (4) a fit (or, at least, a lack of friction) between the injunction and the public interest. *E.E.O.C. v. Astra USA, Inc.,* 94 F.3d 738, 742 (1st Cir.1996).

## II. *Liability of Defendants for Breach of Contract*

Liability under the contracts for goods sold and delivered is undisputed by the parties.

---

**1.** KFI and Clermont are unable to pay for the cranberries at this time due to the precipitous

decline in the price of cranberry juice concentrate.

Defendants KFI and Clermont conceded during oral argument their inability to perform under the contracts due to the precipitous decline in the market price of cranberry concentrate during October 1997. In an agreement dated December 28, 1994, KFI agreed to buy the entire cranberry crop produced by Francis V. Johnson during the years 1995, 1996 and 1997. Between October 2, 1997 and October 30, 1997, Francis V. Johnson delivered $362,910.60 worth of cranberries. On October 27, 1997 KFI made a payment of $50,000. On January 20, 1998 KFI made a payment of $35,896.00. An outstanding balance of $277,014.60 is due under the contract. KFI transferred these cranberries to Clermont for an account receivable. The Court also finds that there is a reasonable likelihood of success on the merits for Francis V. Johnson's reach-and-apply claim against Clermont.

In June 1995 an agreement was made between Charles R. Johnson and Clermont for the sale of the entire cranberry crop produced by Charles R. Johnson during the years 1995, 1996 and 1997 to Clermont. Between October 2, 1997 and October 30, 1997, Charles R. Johnson delivered $1,383,746.60 worth of cranberries. On October 27, 1997 Charles R. Johnson received a payment of $50,000. On January 20, 1998 Charles R. Johnson received $277,514 and was informed that Clermont had encountered financial difficulties. There is an outstanding balance of $1,056,232.60 under the contract.

## III. *Liability of Defendants under PACA*

Count IV of the complaint seeks recovery against individual defendants Edward M. Koplovsky and Elaine Koplovsky as the "responsible persons" under PACA. 7 U.S.C. § 499a(b)(9); 7 C.F.R. § 46.2(ff). This motion raises a novel question regarding eligibility for trust protection under PACA, a statute which has been litigated only rarely in this Circuit. A threshold requirement for a reasonable likelihood of success on the merits under PACA is plaintiffs' eligibility for PACA protection. Defendants have not filed a memorandum in opposition to the preliminary injunction and rely on their filings in the related case of *Hiller Cranberry v. Koplovsky Foods, Inc.*, 2 F.Supp.2d 157. Their argument, previously presented to the Court, is that plaintiff is not entitled to trust protection because the agreements for the sale of the cranberry crop contained payment periods in excess of thirty days, in violation of regulations promulgated by the Secretary of Agriculture.

■ Due to the scarcity of case law on the subject, it is helpful to begin with a brief overview of PACA. PACA was enacted in 1930 to promote fair trading practices in the marketing of perishable agricultural commodities, largely fruits and vegetables. In a 1984 amendment to PACA, Congress provided for the imposition of a trust on certain assets of a defaulting buyer of perishable agricultural commodities in favor of sellers supplying the produce on a "cash" or "short-term credit" basis 7 U.S.C. § 499e(c)(2); *see* H.R.Rep. No. 543, 98th Cong., 2d Sess. 6–7, 12. There are a number of procedural and substantive prerequisites to securing the protection of a PACA trust, the specifics of which the statute leaves largely to the regulatory discretion of the Department of Agriculture. Relevant to the present case are the PACA regulations designed to insure that a produce supplier seeking the protection of the statutory trust is indeed a "short-term" creditor. *In re Davis Distributors, Inc.*, 861 F.2d 416, 417 (4th Cir.1988). In particular, Section 499e(c)(3)(i) provides that the Secretary of Agriculture shall promulgate regulations providing the maximum time upon which parties may agree for payment and still have the benefit of PACA protection. The Secretary issued regulations that establish "the time prescribed by which payment must be made" under Section 499e(c)(3)(i) as between ten and twenty days, with ten days as the standard period. 7 C.F.R. § 46.2(aa). The regulations further provide, with respect to private agreements under Section 499e(c)(3)(ii), that "[t]he maximum time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is thirty days after receipt and acceptance of the commodities...." 7 C.F.R. § 46.46(e)(2).

■ The eligibility of PACA trust protections based on the terms of the maximum

time for payment presents a question of first impression in this Circuit. All of the other circuits addressing the question have upheld the thirty-day maximum period for private agreements as being a permissible construction of the statute. *In re Altabon Foods, Inc.,* 998 F.2d 718, 720 (9th Cir.1993); *In re Lombardo Fruit and Produce Co.,* 12 F.3d 806, 809 (8th Cir.1993); *In re Davis Distributors, Inc.,* 861 F.2d at 417–18; *Mid–Valley Produce Corp. v. 4–XXX Produce Corp.,* 819 F.Supp. 209, 211 (E.D.N.Y.1993). The legislative history unambiguously demonstrates that Congress intended the Department of Agriculture to set a maximum period under which private agreements may extend the payment period. *In re Altabon Foods, Inc.,* 998 F.2d at 720. These courts have held that a payment period extending beyond the thirty-day maximum allowed by the regulations deprives the supplier of PACA trust protection. The Court follows these circuits in holding that any written agreement extending the payment period beyond thirty days would negate the statutory trust provisions.

There are two separate agreements at issue in this case. The contract between Clermont and Charles R. Johnson was executed in June of 1995. The terms of the Agreement allow three-quarters of the purchase price to be paid well in excess of the thirty-day maximum time for payment period established by 7 C.F.R. § 46.46(e)(2). These payment terms are much longer than the forty-five to sixty days provided in the contract in *In re Altabon* which the Ninth Circuit found constituted a waiver of trust protection. *In re Altabon Foods, Inc.,* 998 F.2d at 718. The terms of the Agreement vary slightly from those in *In re Altabon* because in the instant case twenty-five percent of the purchase price is required to be paid within the thirty-day period.

■ The issue presented is whether payment terms that are, in part, within the thirty day maximum time period, in their entirety violate the PACA scheme. This issue has not been litigated in the First Circuit nor does there appear any precedent from other Court of Appeals. The regulations define "full payment promptly" as "specifying the period of time for making payment without committing a violation of the act." 7 C.F.R. § 46.2(aa). Reading "full payment promptly" in connection with the "maximum time for payment" in Section 46.46(e)(2) indicates to the Court that the entire payment must be made within the thirty-day period. This reading of the regulations is supported by the legislative history which was intended to protect those supplying credit on a short term basis. *See* H.R.Rep. No. 543, 98th Cong., 2d Sess. 6–7, 12. The cranberry crop was delivered in October 1997. Under the present contract, twenty-five percent would be paid within thirty days with the balance of the payments spread out until May 31, 1998. Clearly three-quarters of the purchase price is beyond the thirty-day maximum period and in violation of the PACA scheme. The Court rules that this type of structured payment contract is inconsistent with the Secretary's regulations and the statute's concern with short-term credit suppliers. In order, thus, to be eligible for the protection of the PACA statutory trust, the written agreement must comply in its entirety with PACA's thirty-day maximum payment rule.

■ The second contract between KFI and Francis V. Johnson was executed by a letter dated December 28, 1994. This contract, unlike the first contract, contains no terms relating to the dates of payment. Once again this raises an issue which finds scarce precedent in the case law. In most cases, buyers must pay for shipped commodities within ten days after receipt of the produce. 7 C.F.R. § 46.2(aa). The regulations require any agreement to allow more time, up to thirty days after receipt, be reduced to writing. 7 C.F.R. § 46.46(f)(2). Accordingly, several courts addressing the issue concluded that oral agreements have no effect on produce sellers' trust protection. *Hull Company and J & J Distributing Co. v. Hauser's Foods, Inc.,* 924 F.2d 777 (8th Cir. 1991). Likewise courts have held that a party's course of dealings to extend payment time does not effect PACA protection. *Mid–Valley Produce Corp. v. 4–XXX Produce Corp.,* 819 F.Supp. 209, 211–12 (E.D.N.Y. 1993). In this case the written agreement does not contain any terms of payment,

therefore, the Court rules that the ten-day rule controls.

▬ The question now is whether the failure to state a payment date in the letter agreement disqualifies Francis V. Johnson from the protection of PACA statutory trust. The regulations are ambiguous as to whether the ten-day rule applies automatically or must be a term of the contract. The Court employs traditional tools of statutory interpretation, particularly the presumption that ambiguous language in a remedial statute is entitled to a generous construction consistent with its reformative mission. *Hogar Agua y Vida en el Desierto, Inc. v. Jorge Suarez–Medina*, 36 F.3d 177 (1st Cir.1994); *United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 759 (1st Cir.1985) ("It is hornbook law that remedial legislation is to be fairly and reasonably construed so as to effectuate the apparent legislative purpose.") PACA was designed to protect small farmers and growers from "the sharp practices of financially irresponsible and unscrupulous brokers in perishable commodities." *Chidsey v. Geurin*, 443 F.2d 584, 587 (6th Cir.1971). The regulations only require that the payment terms be in writing when extending the payment period beyond ten days. The Court rules that it would be inconsistent with the regulations and underlying statutory purpose to penalize a farmer for not including terms into a simple purchase and sale agreement when not required by the statute. Therefore, the Court rules that in the absence of a written agreement extending the time period, under the regulations payment is due within ten days after delivery.

▬ While the trust is automatically created under the statute, the unpaid seller will lose the trust benefits of the trust unless he "gives written notice of intent to preserve the benefits of the trust to the commission merchant, dealer or broker, and has filed such notice with the Secretary within thirty days after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary." 7

U.S.C. § 499e(c)(3). The regulations issued by the Secretary require payment within ten days of receipt of the goods. 7 C.F.R. § 46.2(aa)(5). Thus, plaintiff must give notice to both the purchaser and the Secretary within forty days of the purchaser's receipt of the goods. Neither the complaint, plaintiffs' memorandum nor supporting affidavits mention any timely notice to either the Secretary or defendants. Without written notice of intent to preserve benefits of the trust, Charles R. Johnson is not entitled to PACA statutory trust protection.[2]

Therefore, the Court finds that there is not a reasonable likelihood of success on the merits against Elaine and Edward M. Koplovsky under either contract because PACA is not applicable as a matter of law.

### IV. *Alter Ego Liability*

▬ In Count VIII plaintiffs argue that Clermont and KFI are alter egos. In Count IX plaintiffs argue that Zero Franklin and Braintree Hill are the alter egos of Elaine and Edward M. Koplovsky. To support this contention, plaintiff must meet a very high standard. *American Home Assurance Company v. Sport Maska, Inc.*, 808 F.Supp. 67, 73 (D.Mass.1992). Under Massachusetts law, disregarding separate corporate entities is the exception, not the rule. *Dale v. H.B. Smith Co., Inc.*, 910 F.Supp. 14, 18 (D.Mass.1995). Piercing the corporate veil is permitted only (1) where one corporation actively and directly participates in the activities of the second corporation, apparently exercising pervasive control, and there is some fraudulent or injurious consequence of the intercorporate relationship, or (2) there is a confused intermingling between corporate entities engaged in a common enterprise. *My Bread Baking Co. v. Cumberland Farms, Inc., et al.*, 353 Mass. 614, 618–19, 233 N.E.2d 748 (1968); *Pepsi–Cola Metropolitan Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 15 (1st Cir.1985).

---

2. Nor has plaintiff Francis V. Johnson produced any evidence of an intent to preserve trust benefits within the required statutory period. The Court does not need to address this point be-

cause by the terms of Francis V. Johnson's contract with KFI plaintiff is not entitled to PACA statutory protection.

## A. *Clermont and KFI as Alter Egos*

Plaintiffs contend that confused intermingling between KFI and Clermont was evident because Warren Wilson acted as an agent of both KFI and Clermont. He represented both companies in discussions with the plaintiffs, took delivery of the cranberries, and delivered payments to plaintiffs. More importantly, all payments were drawn on KFI's checking account. The defendants have not submitted any factual evidence in opposition to plaintiffs' allegation of alter ego liability. Instead defendants have relied on their submission in the companion case which involved a different set of facts. In the *Hiller Cranberry* case there was no evidence that funds were used interchangeably by KFI and Clermont, which is at the essence of confused corporate intermingling.

At this time, on the issue of preliminary injunction and attachments, the Court need not rule on the reasonable likelihood of success on the merits that KFI and Clermont are alter egos. Both KFI and Clermont are liable under the contract for goods sold and delivered and an injunction has been issued against both corporations. The order for attachments in the amount of $1,750,000.00 against KFI and Clermont has been entered on behalf of Plaintiffs Charles R. Johnson and Francis V. Johnson. These attachments are sufficient to secure plaintiffs' claims which are in the amount of $277,014.60 and $1,056,232.60.

## B. *Zero Franklin and Braintree Hill as Alter Egos of Elaine and Edward Koplovsky*

Count IX alleges that Zero and Franklin are alter egos of Elaine and Edward M. Koplovsky. Initially, the Court questions the complaint as drafted because there is not a party "Zero and Franklin" named in the complaint. There are, however, two real estate entities, Zero Franklin Corporation and Braintree Hill Corporation, named in the complaint. The Court assumes plaintiffs intended the Court to determine whether Zero Franklin and Braintree Hill are alter egos of Edward M. Koplovsky and Elaine Koplovsky. The Court, however, need go no further because there has been no finding of individual liability of the Koplovskys. Therefore, with no basis of liability, the Court need not address the alter ego theory as regards the Koplovskys.

## V. *Unfair Trade Practices and Fraudulent Conveyance Claims*

### A. *Unfair Trade Practices*

Count X alleges that KFI, Clermont, Edward M. Koplovsky, and Elaine Koplovsky's actions constitute unfair or deceptive acts or practices under Chapter 93A of the Massachusetts General Laws. Specifically, plaintiffs assert that KFI and Clermont obtained goods from plaintiffs with knowledge or reason to know that they would be unable to make payment. Plaintiffs further assert that Elaine Koplovsky and Edward M. Koplovsky controlled the actions of KFI and Clermont. It is well established that breach of contract, without more, would not violate Chapter 93A. *Chambers Steel Engraving Corp. v. Tambrands, Inc.*, 895 F.2d 858, 861 (1st Cir.1990). It is to be noted that it is the corporations KFI and Clermont which contracted for and received the cranberry product and were responsible for payment and not the Koplovskys. There is no allegation that the Koplovskys personally made any misrepresentation or are liable under the contracts. Again, the Court does not need to rule on the reasonable likelihood of success under Chapter 93A against KFI and Clermont, as both are liable under contract for goods sold and delivered.

Because litigation under Chapter 93A is "rampant," the courts have developed a rigorous test for assessing such claims. *Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1513 (1st Cir.1989). "The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce." *Id.* Stated another way, a Chapter 93A plaintiff "must show that the defendant's actions fell 'within at least the penumbra of some common-law, statutory, or other established concept of fairness,' or were 'immoral, unethical, oppressive or unscrupulous,' and resulted in 'substantial injury ... to competitors or other business-

men.'" *Id.* (quoting *PMP Assoc., Inc. v. Globe Newspaper Co.,* 366 Mass. 593, 321 N.E.2d 915, 917 (1975)).

█] In this case, it seems unlikely that the alleged conduct of Defendants Koplovsky rises to the level of "rascality" necessary for plaintiffs to recover under Chapter 93A. Plaintiffs' Chapter 93A action is not based on any underlying cognizable tortious cause of action against the Koplovskys. Instead, the thrust of plaintiffs' argument is that KFI and Clermont had no intention to pay plaintiffs for the cranberry crop and that the Koplovskys controlled the actions of the corporations. It is very difficult to prove a defendant's present intention relating to future conduct. Moreover, the inability of KFI and Clermont to pay resulted from the precipitous decline in the market price for cranberry concentrate caused by the actions of a third party. This, coupled with the undisputed fact that payments were made up to and after the decline in market price, weighs against a finding of a reasonable likelihood of success against the Koplovskys, who were not responsible for payment under the contracts nor alleged to have personally made any misrepresentation.

Moreover, without the PACA claim there is no federal subject matter jurisdiction under 28 U.S.C. § 1331 nor is there complete diversity under Section 1332 because plaintiffs and Defendants KFI, Elaine Koplovsky and Edward M. Koplovsky are citizens of Massachusetts. Based on the complaint and supporting affidavits, the Court rules that there is not a reasonable likelihood of success on the merits under Chapter 93A against the Defendants Koplovsky for their conduct does not attain the necessary level of rascality for recovery.

### B. *Fraudulent Conveyances*

Count V alleges that KFI's transfer of the cranberry crop to Clermont for an account receivable was a fraudulent conveyance in violation of Massachusetts General Laws Chapter 109A, § 5(a). Additionally, Count VI alleges that Edward M. Koplovsky transferred title to three parcels of real estate in Massachusetts to Zero and forty parcels of real estate to Braintree for consideration of $1.00 in violation of Massachusetts General Laws Chapter 109A, § 5(a).

█] The Court finds that under the contract for goods sold and delivered KFI and Clermont are "debtors" for the purposes of Chapter 109A, § 5. At this time, on the matter of a preliminary injunction and attachment, the Court need not need to address the reasonable likelihood of success on the merits because the injunction and attachments are already in place against KFI and Clermont.

█] The Fraudulent Conveyance Act furnishes an expeditious method whereby creditors may satisfy their claims, but it does not create claims. *Blumenthal v. Blumenthal,* 303 Mass. 275, 21 N.E.2d 244 (1939). The Court has ruled that there is not a reasonable likelihood of success on the merits against Edward M. Koplovsky and Elaine Koplovsky individually, *a priori* there can be no reasonable likelihood of success on the fraudulent conveyance claim.

### CONCLUSION

The Court issued a Court Order of Preliminary Injunction and Issuance of Attachment on May 1, 1998. The Court ordered a preliminary injunction against KFI and Clermont.

All attachments previously approved by this Court against KFI and Clermont, in favor of the plaintiffs, shall continue in effect.

All attachments previously approved by this Court against Edward M. Koplovsky, Elaine Koplovsky, Braintree Hill Corporation, and Zero Franklin Street Corporation, in favor of plaintiffs, are hereby dissolved.