**HILLER CRANBERRY PRODUCTS, INC., Plaintiff,**

v.

**Edward M. KOPLOVSKY, Koplovsky Foods, Inc., and Clermont, Inc., Defendants.**

**First Trade Union Savings Bank, Trustee.**

**No. 98–CV–480.**

United States District Court, N.D. New York.

May 18, 1998.

**90**

Hinman, Straub, Pigors & Manning, P.C., Albany, NY, for Plaintiff; Thomas D. Latin, of counsel.

Whiteman, Osterman & Hanna, Albany, NY, for Defendants Edward M. Koplovsky and Clermont, Inc.; D. Scott Bassinson, of counsel.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

#### A. Facts

**Plaintiff Hiller Cranberry Products, Inc.** ("plaintiff" or "Hiller") is a Massachusetts corporation. **Defendant Koplovsky Foods, Inc. ("KFI")** also is a Massachusetts corporation. **Defendant Edward M. Koplovsky** is President and a majority shareholder of KFI. **Defendant Clermont, Inc. ("Clermont")** is an Oregon corporation. Trustee First Trade Union Savings Bank is a Massachusetts banking institution that holds KFI assets and against which Hiller seeks trustee process.

On September 10, 1996, Hiller and KFI entered into a supply agreement pursuant to which Hiller agreed to sell and KFI agreed to buy thirty-three percent of all of the Massachusetts-grown cranberries sold by Hiller for processing purposes during each contract year. The purchase price for the cranberries sold by Hiller to KFI would be the average price per-barrel that Hiller pays its contracted growers during a particular contract year harvest, no less than $80 per barrel, plus $10 dollars per barrel, subject to certain price adjustments. Under the terms of the agreement, KFI was obligated to pay 75% of the purchase price for the cranberries delivered by Hiller within ten days of the invoice date, 12.5% of the purchase price no later than January 1 of the year following delivery of the cranberries, and the final 12.5% no later than February 1 of the year following delivery of the cranberries.

Between September 25, 1997 and November 25, 1997, Hiller shipped cranberries in the total amount of $6,925,455.58 to KFI. As of this date, Hiller has received payments from KFI in the amount of $2,700,000, leaving an outstanding balance due to Hiller from KFI under the agreement of $4,225,455.58, plus interest.

After taking possession of the cranberries last Fall, KFI sold them to its other company, Clermont. KFI did not add value to the cranberries and served merely as a conduit. Clermont, in turn, immediately pledged the cranberries to Clermont's lender in order to secure a multi-million dollar loan to Clermont. Clermont used only a fraction of the loan to pay Hiller, using the rest to pay Koplovsky and other creditors of Koplovsky and his companies.

When no additional payment was forthcoming over the next several weeks, Hiller made demand upon KFI for the immediate payment of the outstanding balance due under the agreement. Hiller alleges that despite repeated assurances, KFI has refused to pay the outstanding balance due. On December 5, 1997, Hiller filed a Notice of Intent to preserve Trust Benefits with the U.S. Dept. Of Agriculture and sent a copy of the notice to KFI.

Plaintiff asserts that any conveyance of assets or transfer of assets by KFI to Clermont was fraudulent, done at a time when KFI was insolvent or otherwise unable to pay its debts, and was done to hinder, delay or defraud creditors like plaintiff. In December of 1997, Koplovsky in fact transferred, for one dollar each, several parcels of real property in Massachusetts to entities with which he was affiliated.

#### B. Procedural History

On March 11, 1998, plaintiff brought an action in the U.S. District Court for the District of Massachusetts, and obtained orders of attachment as to defendants' Massachusetts property. Plaintiff commenced this action on March 20, 1998. The Complaint contains several claims. Plaintiff alleges fed-

eral question jurisdiction based upon its claims for payment from Trust under the Perishable Agricultural Commodities Act of 1930 (PACA), 7 U.S.C. §§ 499a–499s. On March 25, 1998, plaintiff filed an *ex parte* motion for an Order of Attachment against defendants. This Court granted the motion the same day. Pursuant to the Order of Attachment, on April 2, 1998 the Columbia County Sheriff filed a Notice of Attachment with the Columbia County Clerk, thereby levying on real property owned by Koplovsky in Hudson, New York. On April 7, 1998, plaintiff brought the present timely motion to confirm the Order of Attachment.

## II. DISCUSSION

### A. Motion to Confirm

On a motion to confirm an order of attachment, CPLR § 6211(b) incorporates the requirements of § 6223(b). The latter section provides, in pertinent part, that

> the plaintiff shall have the burden of establishing the grounds for the attachment, the need for continuing the levy and the probability that he will succeed on the merits.

CPLR § 6223(b). *See also Merrill Lynch Futures, Inc. v. Kelly,* 585 F.Supp. 1245, 1249 (S.D.N.Y.1984).

At oral argument on the motion, defendants' counsel submitted an affidavit apprising the Court of a decision of the United States District Court for the District of Massachusetts in a related action. *See Hiller Cranberry Products, Inc. v. Koplovsky Foods, Inc.,* 2 F.Supp.2d 157 (D.Mass.1998) (Harrington, J.). Plaintiff here sued the same defendants in that action, and moved for a preliminary injunction and writs of attachment. *Id.* at 158. In denying the motion, the court held, *inter alia,* that plaintiff failed to show it had a reasonable likelihood of success on the merits on the PACA claim. *Id.* This Court agrees with that conclusion, and because plaintiff has no reasonable likelihood of success upon its federal claim, the motion to confirm the order of attachment must be dissolved.

▆ 7 U.S.C. § 499e(c)(2) provides, in relevant part, that

[p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions … and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers or agent.

In short, PACA creates a statutory trust for the unpaid seller of perishable agricultural commodities by which the buyer's obligation becomes a trust obligation superior to the interest of the buyer's secured lender. *Sanzone–Palmisano Co. v. M. Seaman Enterprises, Inc.,* 986 F.2d 1010, 1012 (6th Cir. 1993). To qualify for trust protection under the statute, however, PACA's implementing regulations mandate that "[t]he maximum time for payment for a shipment to which a seller, supplier, or agent can agree … is 30 days after receipt and acceptance of the commodities." 7 C.F.R. § 46.46(f)(2). As Judge Harrington noted, every court addressing the maximum 30–day time limit for payment has upheld the regulation as a permissible construction of the statute. *Hiller Cranberry,* at 158 (citing *In re Altabon Foods, Inc.,* 998 F.2d 718, 720 (9th Cir.1993); *In re Lombardo Fruit and Produce Co.,* 12 F.3d 806, 809 (8th Cir.1993); *In re Davis Distributors, Inc.,* 861 F.2d 416, 417–18 (4th Cir.1988); *Mid–Valley Produce Corp. v. 4–XXX Produce Corp.,* 819 F.Supp. 209, 211 (E.D.N.Y.1993)).

▆ The consequence of the regulation is simple: a written contract with payment terms beyond the 30–day maximum period "deprives the supplier of trust protection." *Hiller Cranberry,* at 158; *In re Lombardo,* 12 F.3d at 809; *Mid–Valley,* 819 F.Supp. at 211. The contract at issue here provides, in relevant part, that KFI would pay 75% of the purchase price within 10 days of the invoice date, 12.5% by January 1 of the following year, and the remaining 12.5% by February 1 of the following year. This Court agrees with Judge Harrington that these payment terms allow one-quarter of the purchase price under the contract to be paid in excess

of the 30–day maximum required by the regulations. *Hiller Cranberry,* at 159. Moreover, because the regulations require *"full* payment," 7 C.F.R. § 46.2(aa) (emphasis added), within the 30–day period, extending payment of one-quarter of the purchase price beyond thirty days is fatal to plaintiff's PACA claim. *See Hiller Cranberry,* at 159.

The Court concludes plaintiff has no probability of success on its PACA claim, the only claim that presents a federal question and upon which jurisdiction is based. *See* 28 U.S.C. § 1331; Compl. ¶ 8. Because the federal claim is subject to dismissal, the Court would likely decline to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. 1367(c)(3). Accordingly, plaintiff has failed to make the required showing under CPLR § 6223(b) that it has a probability of success on the merits. The motion to confirm, therefore, must be denied.

### III. CONCLUSION

For all of the foregoing reasons, plaintiff's motion to confirm the Order of Attachment is hereby **DENIED,** and the Order is **DISSOLVED.**

**IT IS SO ORDERED.**